**UNITED STATES of America, Appellee,**

v.

**Frank Dennis FELIX, Appellant.**

**No. 88–1249.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 23, 1988.

Decided Feb. 3, 1989.

Rehearing Denied March 17, 1989.

Tex McConathy, Dallas, Tex., for appellant.

Robin J. Aiken, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before HEANEY * and BOWMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Frank Dennis Felix was convicted after a jury trial of attempting to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 846.[1] The District Court[2] imposed a fine and sentenced Felix to seven years in prison. Felix appeals his conviction. We affirm.

### I.

Evidence presented to the jury was essentially as follows. Government witness Paul Roach testified that during the spring of 1987 Felix furnished him with methamphetamine-making chemicals and equipment in exchange for lessons on how to "cook" (*i.e.*, produce) methamphetamine. Roach further testified that he and Felix bought chemicals and equipment from a business called Tulsa Scientific in Tulsa, Oklahoma, and eventually cooked methamphetamine in a trailer near Beggs, Oklahoma. United States Drug Enforcement Administration (DEA) confidential informant George Dwinnells worked at Tulsa Scientific and he testified that, on a number of occasions, he sold Felix chemicals and equipment that could be used to make methamphetamine. According to Dwinnells, Felix said that he was trying to make "dope."

On July 13, 1987, law enforcement officials seized the trailer near Beggs. The trailer was in fact being used as a methamphetamine lab. Dwinnells testified that Felix informed him that during the seizing of the lab he (Felix) had avoided arrest by hiding in nearby woods.[3]

On August 26, 1987, Felix and Dwinnells held a prearranged meeting at a bar. Felix gave Dwinnells a matchbook cover with a list of chemicals and equipment for making methamphetamine. Government evidence showed that Felix also gave Dwinnells a down payment of $7,500 for the chemicals and equipment, told him to secure a trailer to transport the items, and gave him directions and phone numbers so that the items could be delivered. In subsequent telephone conversations Felix increased his order (requesting both more chemicals and more equipment)[4] and instructed Dwinnells to deliver the items at the Joplin, Missouri, Holiday Inn.

A controlled delivery was arranged to be made in Joplin on August 31, 1987, with DEA agents and the Missouri Highway Patrol providing the surveillance. Dwinnells hitched a trailer stocked with chemicals and equipment for making metham-

---

* The Honorable Gerald W. Heaney assumed senior status on December 31, 1988.

1. Section 841(a) provides, "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

 Section 846 provides, "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

2. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

3. At least one car owned by Appellant (or a company he owned) was seized at the lab.

4. The list of items requested on the matchbook cover did not include acetic anhydride (AA), a necessary chemical for making methamphetamine. During the telephone conversation in which Felix increased his order, the need for AA was discussed. Felix and the Government dispute whether during this conversation Felix assented to adding AA to the list. We do not find it necessary to resolve this dispute in order to decide this appeal.

phetamine to his vehicle and drove to Joplin. Felix and Dwinnells met at the Joplin Holiday Inn (where Felix had rented a room) and, after a brief conversation, went to the lot where Dwinnells had left the trailer. After looking at the trailer's cargo, they returned in Dwinnells's vehicle, trailer in tow, to the Holiday Inn. Felix then bought new locks, attached them to the rear doors of the trailer, and the trailer was hitched to his car.[5]

Shortly thereafter Felix was arrested. He did not tell the arresting officers that he was working as a covert operator on behalf of the DEA, nor did he thereafter seek to so notify the DEA or any other federal agency.[6] On September 15, 1987, a federal grand jury returned a one-count indictment against Felix charging him with knowingly and intentionally attempting to manufacture methamphetamine. His conviction and this appeal followed.

## II.

### A.

■ In the first of six arguments presented on appeal, Felix argues that there was insufficient evidence to support his conviction and that the District Court therefore erred by denying his motion for a judgment of acquittal. Our standard of review on this issue is well-established: "[W]e must examine the evidence in a light most favorable to the government, giving it the benefit of all reasonable inferences. We will then reverse only if a reasonable jury could not have found guilt beyond a reasonable doubt." *United States v. Davis*, 785 F.2d 610, 619 (8th Cir.1986). *Accord United States v. Parrino*, 816 F.2d 414, 417 (8th Cir.1987).

Our review of the record leads us to conclude that there was sufficient evidence to support the jury's verdict. Felix was convicted of attempting to manufacture methamphetamine, so we consider whether the jury could reasonably have found "(1) an intent to engage in criminal conduct, and (2) conduct constituting a 'substantial step' towards the commission of the substantive offense which strongly corroborates the actor's criminal intent." *United States v. Joyce*, 693 F.2d 838, 841 (8th Cir.1982). *Accord United States v. Mazzella*, 768 F.2d 235, 239 (8th Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). With regard to the first element, evidence was presented that Felix actively learned to cook methamphetamine, toward that end supplied his instructor with methamphetamine-making chemicals and equipment, and eventually made methamphetamine at a lab near Beggs, Oklahoma. Evidence was also presented that, after DEA officials seized the Beggs lab, Felix ordered chemicals for making "a hell of a bomb," with the intent of preventing law enforcement officials from seizing his next lab. Evidence further showed that Felix subsequently ordered enough chemicals and equipment to make several kilos of methamphetamine and that, upon receipt of the items, he planned to produce the drug at a lab of his own. Concerning the second element of attempt, we note initially that this Court has held that a defendant took the requisite "substantial step" when, with knowledge of how to make methamphetamine, he ordered, received, and possessed the necessary chemicals. *See Mazzella*, 768 F.2d at 240. In the present case, the Government's evidence showed that, after learning how to make methamphetamine, Felix ordered the necessary chemicals and equipment, had a trailer full of the chemicals and equipment delivered to him, and paid $7,500 for the delivered goods. The Government's evidence further showed that, after the delivery, Felix bought new locks, attached the locks to the doors of the trailer bearing the chemicals and equipment, and hitched the trailer to his car. In light of this evidence, we hardly can say

---

5. After Felix's arrest, law enforcement officials confiscated the trailer. Tests conducted by the DEA revealed that the chemicals in the trailer could have produced several kilos of methamphetamine.

6. Felix testified at trial that he engaged in the activities for which he was indicted in the belief that he was working for the DEA. *See* part II.D. of this opinion, *infra*.

that a reasonable jury could not have found that beyond a reasonable doubt Felix was guilty as charged.

### B.

Felix next argues that the trial court violated Federal Rule of Evidence 404(b) by admitting evidence which showed that he had been involved in the methamphetamine-producing lab near Beggs, Oklahoma. Felix denies any affiliation with the lab.[7]

■ Under Rule 404(b) evidence of other crimes or wrongs is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b); *United States v. Lewis*, 759 F.2d 1316, 1349 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). This Court has repeatedly stated that for evidence of prior bad acts to be admissible it must be relevant to a material issue other than the character of the defendant and its probative value must not be substantially outweighed by the danger it presents of unfair prejudice. *See, e.g., Lewis*, 759 F.2d at 1349; *United States v. Gomez*, 733 F.2d 69, 72 (8th Cir.1984). Our cases have further held that for such evidence to be admissible it must be clear and convincing; the Supreme Court, however, recently rejected any such requirement, saying that evidence of prior bad acts "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the [prior acts]." *Huddleston v. United States*, — U.S. —, 108 S.Ct. 1496, 1499 & n. 2, 99 L.Ed.2d 771 (1988). In deciding whether to admit wrongful act evidence the trial judge exercises broad discretion and we will not overturn the decision to admit such evidence absent a clear showing that the above requirements have not been met. *United States v. Evans*, 697 F.2d 240, 248 (8th Cir.), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983).

■ Felix was indicted for knowingly and intentionally attempting to manufacture methamphetamine. "Where specific intent and guilty knowledge are elements of the crime charged, evidence of related criminal activity tending to establish those elements is generally admissible." *United States v. Gocke*, 507 F.2d 820, 824 (8th Cir.1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975). *Accord Lewis*, 759 F.2d at 1349. More specifically, we have repeatedly held that evidence of similar prior drug activity is admissible in drug prosecution cases because a defendant's complicity in other similar transactions serves to establish intent or motive to commit the crime charged. *See, e.g., Lewis*, 759 F.2d at 1349; *Evans*, 697 F.2d at 248–49; *United States v. Lewis*, 423 F.2d 457, 459 (8th Cir.), *cert. denied*, 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970). The evidence linking Felix to the Beggs lab supported the Government's case that Felix had the requisite knowledge and intent to make methamphetamine. This evidence showed Felix learning how to cook methamphetamine, developing a relationship with a supplier of methamphetamine-making chemicals and equipment, and ordering explosives for his future lab. In short, the evidence was relevant to a material issue.

In addition, we hold that evidence concerning Felix's association with the Beggs lab was sufficient to support a jury's finding that Felix had committed the alleged prior bad acts. Previously, using the old "clear and convincing" standard, this Court found admissible an informant's testimony regarding a defendant's previous drug transactions when the testimony was specific and unambiguous; we held that such testimony was admissible even when there was no corroborating evidence. *See Evans*, 697 F.2d at 249. Here, the witnesses implicating Felix in the Beggs lab activities gave detailed accounts of when and where the alleged conduct took place, what was done, and who was involved. Moreover,

---

**7.** One of the witnesses who testified regarding Felix's affiliation with the Beggs lab was Paul Roach. Although Felix asserts that his defense counsel objected to Roach's testimony, we find in the record no such objection. This is without significance, however, since even if there had been an objection, admission of Roach's testimony was proper.

their testimony was mutually corroborative and supported by circumstantial evidence. With our previous decisions applying the clear and convincing standard as a benchmark, we find that this evidence easily satisfies the new, less demanding standard enunciated in *Huddleston*.

Finally, the probative value of this evidence was not substantially outweighed by its prejudicial effect. As discussed above, the testimony concerning the Beggs lab was highly probative of Felix's knowledge and intent, which were elements of the crime with which he was charged. Further, any potential for inappropriate use of this evidence by the jury was diminished by the District Court's instruction that the previous crime evidence could not be considered "to decide whether the defendant carried out the physical acts involved in the crime charged here." Designated Record (D.R.) at 22.

## C.

■ Felix next asserts that the District Court erred by prohibiting him from impeaching the credibility of Government witness George Dwinnells with evidence of Dwinnells's "prior felony convictions and convictions involving moral turpitude." Brief for Appellant at 22.[8] The Government argues that because the convictions were more than ten years old it was appropriate for the District Court to exclude this evidence under Federal Rule of Evidence 609(b), which provides in pertinent part as follows:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Rule 609(b) " 'establishes what is in effect a rebuttable presumption against the admissibility of prior convictions more than

ten years old.' " *United States v. Reeves*, 730 F.2d 1189, 1196 (8th Cir.1984) (quoting *United States v. Singer*, 660 F.2d 1295, 1300 (8th Cir.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982) (footnote omitted)). Whether the presumption against admission of such evidence has been overcome is a determination committed to the discretion of the district court. Our scope of review is limited to determining whether that discretion was abused. *Reeves*, 730 F.2d at 1196.

■ This Court has echoed the sentiment of the Senate Judiciary Committee that " 'convictions over ten years old generally do not have much probative value' " and that they therefore should be " 'admitted very rarely and only in exceptional circumstances.' " *Reeves*, 730 F.2d at 1196 n. 7 (quoting S.Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7061–62). We do not perceive, and Felix does not argue in his brief, that there were exceptional circumstances in this case. Moreover, we note that Felix was able to attack the credibility of Dwinnells by means other than the stale convictions. For example, Dwinnells was extensively cross-examined regarding his motives for testifying and he admitted that the government had paid him several thousand dollars for his assistance in previous drug investigations. He also admitted to having a long and close association with the DEA, wherein his role was to help "mak[e] criminal cases against individuals." I Trial Transcript (Tr.) at 45. In addition, defense counsel emphasized apparent contradictions in Dwinnells's testimony and attacked Dwinnells's veracity by arguing to the jury that one possible interpretation of the facts was that Dwinnells had been stealing chemicals in order to make illegal drugs himself.

The trial court is best situated to determine whether "the interests of justice" are served by admitting into evidence prior convictions that are more than ten years old. *Singer*, 660 F.2d at 1300. In the circumstances of this case, we cannot say that the

---

**8.** The convictions apparently were for felony theft and robbery.

trial court abused its discretion in ruling the convictions inadmissible.[9]

#### D.

■ Felix next argues that the District Court erred by not giving the jury an instruction on the defense of entrapment. Outside the presence of the jury, the parties and court discussed the instructions to be given. Some confusion surrounded the discussion, with the trial judge referring to a reasonable belief or mistake instruction as one for entrapment. Defense counsel had indicated he wanted an entrapment instruction but, apparently satisfied with the instruction on reasonable belief or mistake, withdrew his previously submitted instruction on entrapment. Defense counsel did not object to the instructions either at the close of the instruction conference or after the reading of the instructions to the jury. Counsel's failure to object to the jury charge in a timely and specific manner resulted in a waiver of objection on appeal and we will reverse the judgment only if the trial court committed "plain error." *United States v. Gantos*, 817 F.2d 41, 43 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 175, 98 L.Ed.2d 128 (1987); *United States v. McKnight*, 799 F.2d 443, 447 (8th Cir.1986). "Plain error results when the omitted instructions affect the defendant's substantial rights resulting in a miscarriage of justice." *Gantos*, 817 F.2d at 43. *Accord McKnight*, 799 F.2d at 447.

■ We do not consider the omission of the entrapment instruction to be plain error, if indeed it was error at all. To be entitled to an entrapment instruction, Felix needed to come forward with evidence that government agents implanted criminal design in his mind and induced him to commit the offense. *See United States v. Kutrip*, 670 F.2d 870, 877 (8th Cir.1982).[10] We find no evidence that government agents implanted criminal intent in Felix's mind. To the contrary, the evidence Felix presented was designed to show that he never had criminal intent, but had been acting under the mistaken belief that he was working in a covert DEA operation. His argument concerning the lack of an entrapment instruction is without merit.[11]

#### E.

■ Felix next contends that the trial court erred in its limiting instruction to the jury regarding evidence that he previously had committed a similar crime. We disagree.

The instruction at issue read:

> You have heard evidence that the defendant previously committed a crime

---

9. The Government also argues that because the convictions were expunged, the evidence was properly excluded under Federal Rule of Evidence 609(c), which provides:

 > Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure *based on a finding of the rehabilitation* of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure *based on a finding of innocence.*

 Fed.R.Evid. 609(c) (emphasis added). By its own terms, Rule 609(c) precludes admission of prior convictions otherwise admissible under Rule 609 only if the pardon, annulment, or other similar procedure was based on a finding that the convicted person was rehabilitated or innocent. Because there is nothing in the record giving the reasons for the expungement of the convictions at issue here, there is no basis for concluding that Rule 609(c) makes these convictions inadmissible. Instead, since they are more than ten years old, their admissibility is governed by Rule 609(b).

10. "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988).

11. Felix's defense that he believed he was working for the DEA, and therefore lacked criminal intent, is inconsistent with the defense of entrapment. The Supreme Court's recent decision in *Mathews* makes clear that a defendant may present defenses inconsistent with entrapment without thereby foreclosing the right to an entrapment instruction; it also reiterates, however, that for the defendant to be entitled to such an instruction there must be "sufficient evidence from which a reasonable jury could find entrapment." *Mathews*, 108 S.Ct. at 886. There is no such evidence in the present case.

similar to the one charged in this case. You may not use this evidence to decide whether the defendant carried out the physical acts involved in the crime charged here. However, if you are convinced beyond a reasonable doubt, by other evidence, that the defendant did carry out the physical acts involved in the crime charged here, then you may consider this evidence only on the question of motive, opportunity, preparation, plan, knowledge, identity or absence of mistake.

D.R. at 22. *See* Fed.R.Evid. 404(b). Without citing any supporting authority, Felix contends that the District Court should have further instructed the jury that the other crime evidence could be considered only if all of the elements of the earlier offense had been established by evidence that was "clear and conclusive." [12]

The instruction the trial judge gave followed the relevant pattern instruction for the Eighth Circuit. *See* Manual of Model Criminal Jury Instructions for the Eighth Circuit, Instruction 2.08 (1986). The Eighth Circuit's pattern instruction is consistent with the instruction recommended by the United States Judicial Conference and other authority. *See* Federal Judicial Center, Pattern Criminal Jury Instructions, Instruction 50 (1988); 1 L. Sand, J. Siffert, W. Loughlin, & S. Reiss, Modern Federal Jury Instructions, ¶ 5.10 (1988). *But see* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 14.14 (3d ed. 1977). Felix provides no persuasive reason for concluding that the District Court erred by not including in the instruction the requested additional language, and we cannot think of any such reason. We are satisfied that the instruction as given was correct.

### F.

■ Finally, Felix argues that certain remarks made by the Assistant United States Attorney (AUSA) in closing argument deprived him of a fair trial. Specifically, Felix claims that the AUSA argued outside the record, introduced new evidence, and gave his personal opinion as to certain of the evidence Felix presented. The scope of closing arguments is a matter committed to the trial court's discretion and we will find reversible error only if that discretion is abused. *United States v. Bell,* 651 F.2d 1255, 1260 (8th Cir.1981).

■ We have reviewed the remarks Felix characterizes as objectionable and find no basis for reversal. We do not perceive that the AUSA argued outside the record or introduced new evidence. In one challenged remark, the AUSA did express his opinion that certain evidence was bogus. Commenting on a hotel receipt introduced into evidence by Felix, the AUSA said "I haven't the foggiest idea who wrote this. I am sure it's not real; it's forged." III Tr. at 454. The AUSA preceded this remark, however, with a recitation of factual grounds for reaching the conclusion that the receipt was bogus based on evidence at trial. For example, he reminded the jury that relevant hotel ledgers contained no record of Felix's having stayed at the hotel. As we read the challenged remark, the AUSA was urging a conclusion based on the evidence. Indeed, the AUSA followed the remark at issue by saying, "From the evidence you can conclude [that] this is no doubt a forged document." *Id.* at 455. Because an attorney may urge a conclusion based on the evidence, the remark at issue, when viewed in context, is not improper. *See United States v. Morris,* 568 F.2d 396, 401 (5th Cir.1978); *see also United States v. McCaghren,* 666 F.2d 1227, 1232 (8th Cir.1981). Moreover, the District Court instructed the jury that "[s]tatements, arguments, ... and comments by lawyers are not evidence," D.R. at 11, a point the court reiterated during the Government's closing argument. We conclude that Felix's contentions regarding the closing argument lack substance.

---

12. The section of Felix's brief discussing this issue cites two cases, *Nye & Nissen v. United States,* 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949), and *Lisenba v. California,* 314 U.S. 219, 227, 62 S.Ct. 280, 285, 86 L.Ed. 166 (1941). We fail to see how these cases in any way support Felix's argument.

The judgment of the District Court is affirmed.