**UNITED STATES of America, Appellee,**

v.

**Damon W. THOMPSON, Appellant.**

No. 88–2456.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1989.

Decided June 13, 1989.

Raymond C. Conrad, Jr., Kansas City, Mo., for appellant.

Thomas H. Newton, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before JOHN R. GIBSON and BOWMAN Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Damon Thompson appeals from his conviction and sentencing for possession of cocaine with intent to distribute in violation of 28 U.S.C. §§ 841(a) and 841(b)(1)(C). On appeal, he argues that the district court erred in denying his motion to suppress evidence obtained from him in violation of the fourth amendment, and in refusing under the Sentencing Guidelines to allow a two level reduction for acceptance of responsibility. We affirm the judgment of the district court.[1]

On February 5, 1988, Officer Robert Starbuck and two other police officers went to the Kansas City International Airport to

---

1. The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.

investigate information provided by a confidential informant concerning the transportation of cocaine. The confidential informant had provided information that in the late afternoon of February 5, 1988 a black male, in his early twenties, about 5'8" tall, with a stocky build and short cropped hair would arrive on a flight from Los Angeles carrying cocaine. The informant also stated that the individual was associated with a certain Los Angeles street gang called "Crips." The three detectives, who had determined that a direct Eastern Airlines flight would arrive from Los Angeles at 5:38 p.m., observed the incoming flight. When Thompson exited the plane, he was one of only two black male passengers, the other being in his forties. Thompson carried a bag, and was dressed all in blue, which Officer Starbuck stated was a characteristic of members of the Crips gang.

Thompson visited the restroom, walked through the terminal, approached a telephone, left the terminal, and then entered a cab. Thompson appeared nervous and cautious. Just as he seated himself, Starbuck and another officer came to the side of the cab, displayed their badge and asked Thompson if he would talk with them. Upon Starbuck's request, Thompson stepped out of the cab. Starbuck explained to Thompson that they had been informed that a person fitting his description would arrive from Los Angeles with cocaine. Thompson was cooperative and answered Starbuck's questions. Starbuck then asked to examine Thompson's airline ticket, observed that it was in the name of A. Johnson, and returned it to Thompson. When asked his name, Thompson first responded that his name was Adams, then that his first name was Adams, then that his full name was Adams, and then, after glancing at the ticket, that his name was Adam Johnson. Thompson appeared nervous as he discussed his identity. While there were long pauses between his answers, Thompson explained that he had a hearing problem.

Starbuck then asked Thompson to step inside the terminal. When inside Starbuck again asked Thompson for his ticket and returned it to him after examining it. After further discussion Starbuck told Thompson that because he fit the description that had been provided to police, he would like to search Thompson's bag. Starbuck told Thompson that he did not have a search warrant, and that he was not obliged to permit the search. Starbuck then produced a consent to search form. Although Thompson refused to sign it, he allowed Starbuck to search his person and his bag. A search of the bag produced only clothing. Starbuck then told Thompson that he wanted to search his person for cocaine and weapons, and again Thompson stated that he would not sign the consent form but that he would allow the search. At this point Starbuck observed a bulge in Thompson's left jacket pocket and retrieved three clear bags containing hard white powder. Thompson was placed under arrest, given *Miranda* warnings and taken to police headquarters where a statement was obtained from him. After he was placed under arrest, he admitted his correct name.

Thompson was later indicted, and he filed a motion to suppress illegally obtained evidence. After an evidentiary hearing, a magistrate[2] determined that Thompson was searched incident to a lawful arrest. The magistrate concluded that probable cause existed to arrest Thompson, based upon information provided by the confidential informant. In addition, the magistrate found that Thompson voluntarily consented to the detectives' search of his bag and person. The district court adopted the report and recommendation of the magistrate. Thereafter, Thompson entered a conditional guilty plea. Under the Sentencing Guidelines the district court determined that Thompson had an offense level of 18, denied a two level reduction for acceptance of responsibility, and sentenced Thompson to 33 months imprisonment.

2. The Honorable Calvin K. Hamilton, Chief United States Magistrate, Western District of Missouri.

## I.

Thompson argues that because the airport search violated his fourth amendment rights, the district court erred in denying his motion to suppress evidence that he was carrying cocaine and a statement given by Thompson after his arrest. Thompson maintains that he was arrested when the officer took his airline ticket from him after being escorted back into the airport terminal, and that the police lacked probable cause to arrest him at this time. Thompson also claims the government did not establish that he consented to the search of his person and bag. He stresses that he was nineteen years old and was yelled at and told he was lying by the officers. Therefore, he maintains that any consent was not voluntary.

■ The magistrate determined that when Starbuck saw Thompson arrive at the time of day and from the city stated by the confidential informant, and that Thompson met every detail of the confidential informant's description, Starbuck had personally verified all of the information given him by the informant, except whether Thompson had cocaine in his possession. Thus, Starbuck had reasonable grounds to believe that the remaining unverified bit of information—that the defendant possessed cocaine—was likewise true. Citing *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959), the magistrate held that Starbuck could have effected a lawful arrest as soon as he observed the defendant enter the terminal building.

In *Draper*, the Supreme Court stated that "probable cause exists where the facts and circumstances within [the arresting officer's] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has or is being committed." 358 U.S. at 313, 79 S.Ct. at 333 (citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1924)). We will uphold a finding of probable cause unless it is clearly erroneous. *United States v. Henry*, 763 F.2d 329, 331 (8th Cir.1985). In reviewing the record, we are satisfied that the magistrate's factual findings are not clearly erroneous, and that he did not err in concluding from the totality of the circumstances that Starbuck had reasonable grounds to believe Thompson was in possession of drugs when he entered the airport terminal. The subsequent arrest of Thompson was therefore lawful.

As an alternative basis for denying Thompson's motion to suppress evidence, the magistrate determined that Thompson voluntarily consented to the search of his bag and his person. The voluntariness of consent is a factual issue, and we will not overturn this and other findings of the magistrate, as adopted by the district court, unless clearly erroneous. *See United States v. Campbell*, 843 F.2d 1089, 1095 (8th Cir.1988); *United States v. Turpin*, 707 F.2d 332, 334 (8th Cir.1983).

Starbuck did not violate Thompson's rights by approaching him, identifying himself, and asking him to answer questions. "Law enforcement officers do not violate the fourth amendment by merely approaching an individual on the street or in another public place by asking him if he is willing to answer some questions [and] by putting questions to him." *Campbell*, 843 F.2d at 1092; *see also Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983).

■ Thompson contends, however, that when Starbuck took his ticket from him to examine it, this amounted to a seizure, which requires reasonable suspicion or probable cause. *See INS v. Delgado*, 466 U.S. 210, 215–17, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247 (1984). In determining whether a person has been seized, the inquiry is whether "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In this case, Starbuck took Thompson's airline ticket from him during the initial encounter outside of the terminal and later inside the terminal. On both occasions, Starbuck immediately returned the ticket to Thompson after observing it and asking him questions concerning his identity. Starbuck had taken the ticket

only to check Thompson's identity, and in no way indicated to Thompson that he would not return the ticket. Because there is no evidence to support the retention of the ticket by Officer Starbuck, Thompson's argument that there was a seizure must fail.

■ Thompson further argues that his consent to the search of his bag and person was not voluntary because of the intimidating aspects of the encounter. The magistrate's findings have not been shown to be clearly erroneous. *See Campbell,* 843 F.2d at 1095. Prior to each search, Detective Starbuck explained the search procedure to Thompson and discussed his right to refuse the searches. Although Thompson would not sign the consent form, he allowed Starbuck to search his bag and person. These circumstances support the magistrate's findings that Starbuck did not threaten or coerce Thompson to consent to the search. We therefore conclude that evidence of the cocaine and Thompson's statement were properly admitted into evidence.

## II.

■ Thompson argues that under the Sentencing Guidelines the district court should have reduced his base offense level in light of Thompson's acceptance of personal responsibility. This would result in a reduction of his sentence from the 27 to 33 month range to 21 to 27 months.

We must give great deference in reviewing a court's determination of acceptance of responsibility. The commentary to the Sentencing Guidelines expressly states that the "sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless without foundation."

Thompson bases his argument that the district court misapplied the Guidelines on the questions the court asked him, which suggested that it would not grant the reduction absent cooperation with law enforcement authorities. Section 3E1.1(a) of the Guidelines allows for the reduction of a sentence by two levels for those defendants who "clearly [demonstrate] a recognition and affirmative acceptance of personal responsibility for the offense of conviction...." One factor to be considered is the defendant's voluntary and truthful admission to authorities of his involvement in the offense and related conduct. *See* section 3E1.1. The court's questions concerning Thompson's responses to the officers after his arrest and his discussion of the case with law enforcement officers were consistent with determining that particular factor.

Further, the judge's statement "I'm going to make a finding that he's not entitled to the two points for cooperation" does not prove that he misapplied the Guidelines. The transcript of the sentencing hearing reveals that the district court was fully aware that the issue was Thompson's acceptance of responsibility under section 3E1.1. Thompson argued at the sentencing hearing that he accepted responsibility because he pleaded guilty to the offense, and gave such information as the name of the man who arranged for him to transport drugs and the name and description of the man's car. The district court properly stated that a plea of guilty alone did not necessarily indicate acceptance of responsibility. *See United States v. Nunley,* 873 F.2d 182, 187 (8th Cir.1989).

■ According to a pre-sentence report considered by the district court during sentencing, when Thompson was questioned by the probation officer, he simply answered "it's a long story, I don't want to talk about it." The report concluded that Thompson had failed to demonstrate a recognition and affirmative acceptance of personal responsibility. Furthermore, Thompson did not voluntarily terminate his illegal conduct or surrender himself to the authorities before his arrest. Based upon this evidence revealed at the sentencing hearing, we are satisfied that the district court did not err in allowing no reduction of sentence for acceptance of responsibility, and properly applied the Guidelines. Ac-

cordingly, we affirm the sentence imposed by the district court.