UNITED STATES of America, Appellee,

v.

Patrick Harm KEENE, Appellant.

No. 89–5442.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1990.

Decided Sept. 25, 1990.

Michael W. McNabb, Burnsville, Minn., for appellant.

Thorwald H. Anderson, Jr., Minneapolis, Minn., for appellee.

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

Before McMILLIAN and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Patrick Harm Keene appeals from a final judgment entered in the District Court[1] for the District of Minnesota upon a jury verdict finding him guilty of one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846, two counts of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d), one count of use of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). The district court sentenced Keene to a total of 70 months imprisonment for the drug conspiracy and possession of firearms counts, and five years imprisonment for the possession of the firearm in connection with drug trafficking count, to be served consecutively, six years supervised release, and a $250 special assessment. For reversal, Keene argues that the district court erred in (1) denying his motion to suppress physical evidence seized during a search of his house because the search was an unlawful nighttime search and the police violated the knock and enter rule, (2) finding that the evidence established that he used firearms in connection with the drug trafficking offense, (3) admitting evidence of a thirteen-year-old drug conviction, and (4) improperly applying the sentencing guidelines, failing to credit him for acceptance of responsibility, and finding he was a leader of the drug conspiracy. For the reasons discussed below, we affirm the judgment of the district court.

## I. Facts

In 1985 Keene and two friends assembled a methamphetamine laboratory in Keene's basement. In January 1988 an informant, who was an acquaintance of Keene's, alerted state authorities that he

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

had seen the laboratory in Keene's basement in 1986. On January 22, 1988, state agents equipped the informant with a body transmitter. The informant then entered Keene's house. The informant observed an operating methamphetamine laboratory in Keene's basement and engaged Keene in detailed conversation about the manufacturing operation. Keene was having problems with the current run of the drug and he sought the informant's advice on increasing the operation's efficiency and the product's quality. The informant told Keene that he would try to solve Keene's problem, and he asked Keene for a sample of the drug in order to perform a chemical analysis. As the informant left Keene's house, Keene jokingly asked "what time should I expect the police over?" Keene further commented that he would "load the H & K." [2] The informant left Keene's house and turned the drug sample over to state authorities.

State agents analyzed the sample delivered by the informant early in the afternoon and obtained a search warrant at 7:30 p.m. from a county district court judge. The search warrant was executed at 8:20 p.m. One state agent entered the closed, but unlocked, back door. The agent did not knock; however, he did yell "police" before entering. The agents discovered the working methamphetamine laboratory in Keene's basement. In addition, the agents found one fully loaded H & K semi-automatic rifle in Keene's bedroom, as well as a loaded over-and-under rifle/shotgun, a loaded .357 revolver, a fully loaded 9 mm semi-automatic pistol, a .22 semi-automatic pistol, a .12 gauge pump shotgun, a .12 gauge shotgun, a .25 semi-automatic pistol, and a silencer.

Keene was charged with federal drug trafficking and weapons offenses. Keene's two friends cooperated with authorities and pleaded guilty to drug manufacturing charges. The district court granted them downward departures for substantial assistance. One was sentenced to twenty-four months imprisonment, the other, to

eighteen months. Keene filed motions to suppress concerning the seizures from his house. After a hearing on the suppression issues, the district court held that the warrant was properly served and that the 8:20 p.m. search did not violate the fourth amendment. The district court also found that exigent circumstances existed warranting a no-knock entry into Keene's house. The jury found Keene guilty on the five counts charged and this appeal followed.

## II. Execution of Search Warrant

■ This court has held that a "clearly erroneous" standard of review is to be applied when assessing a district court's decision to deny a motion to suppress. *United States v. Eisenberg*, 807 F.2d 1446, 1449 (8th Cir.1986) (citing *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985)). We will affirm a district court's order denying a motion to suppress unless we find that the decision is unsupported by the evidence, based on an erroneous view of the applicable law, or we are left with a firm conviction that a mistake has been made. *United States v. Pantazis*, 816 F.2d 361, 363 (8th Cir.1987) (citing *United States v. Lewis*, 738 F.2d at 920). Keene argues that the search of his house was unreasonable and violated his fourth amendment rights because it was an unlawful nighttime search and because the state agents executed a no-knock entry. We disagree.

### A. Nighttime Search

■ Because the execution of the warrant was carried out by state authorities in this case, we note that a state search must be reasonable under the fourth amendment in order for evidence to be admissible in a federal prosecution. *United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988). Keene does not dispute the district court's finding of proba-

---

**2.** H & K is a well-known brand name of assault weapons. At trial, Keene testified that at the time he made the statement the H & K was

unloaded. At the time the search warrant was executed, seven hours later, the H & K was fully loaded.

ble cause to search his house. Rather, Keene asserts that there was no cause to search his house at night in violation of the common law prohibition against nighttime searches.[3] Keene asserts further that under common law, the definition of "night" was the period between sunset and sunrise and that definition currently applies to the reasonableness of a search under the fourth amendment. We disagree.

■ "A search warrant relating to offenses involving controlled substances may be served *at any time of the day or night* if the judge ... is satisfied there is probable cause to believe that grounds exist for the warrant and for its service at such time." 21 U.S.C. § 879 (emphasis added). A nighttime search under this statute "requires no special showing ... other than a showing that the contraband is likely to be on the property or person to be searched at that time." *Gooding v. United States,* 416 U.S. 430, 458, 94 S.Ct. 1780, 1794, 40 L.Ed.2d 250 (1974) (footnote omitted). In the present case, there was probable cause to believe that controlled substances would be found on the premises and that Keene had grown suspicious after the informant's visit. Prompt execution of the warrant was reasonable under these circumstances.

■ Even if controlled substances were not at issue in this case, this search occurred in the daytime as defined by the federal rules. While § 879 does not define "day" or "night," the Federal Rules of Criminal Procedure define "daytime" as "the hours from 6:00 a.m. to 10:00 p.m. according to local time." Fed.R.Crim.P. 41(h) advisory committee's note. Keene argues that § 879 and Rule 41 do not necessarily apply to a fourth amendment analysis of the search because a search made pursuant to those rules may still be unconstitutional. The government argues correctly, however, that § 879 and Rule 41 have never been held to be unconstitutional. *See Hanna v. Plumer,* 380 U.S. 460,

471, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965) (Warren, C.J.) ("the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions") (footnote omitted). We agree with the district court's decision to deny the motion to suppress because the warrant was executed in compliance with 21 U.S.C. § 879, and the 8:20 p.m. search was a "daytime" search under Rule 41.

### B. Knock and Enter

■ Generally, officers executing a search warrant must announce their authority and purpose before entering a dwelling without consent. 18 U.S.C. § 3109. There is, however, an exception to this "knock-purpose" rule when exigent circumstances exist. *Sabbath v. United States,* 391 U.S. 585, 591 n. 8, 88 S.Ct. 1755, 1759 n. 8, 20 L.Ed.2d 828 (1968) (citing *Ker v. California,* 374 U.S. 23, 47, 83 S.Ct. 1623, 1636, 10 L.Ed.2d 726 (1963) (Brennan, J., concurring and dissenting)). Police may enter without knocking "when the officers reasonably believe the persons to be apprehended might destroy evidence during a delay in police entry." *United States v. Tracy,* 835 F.2d 1267, 1270 (8th Cir.1988) (citing *Ker v. California,* 374 U.S. at 47, 83 S.Ct. at 1636), *cert. denied,* 486 U.S. 1014, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988).

■ In the present case, the district court found that the arresting officer entered a closed, but unlocked, door after yelling "police" and hesitating. The warrant authorized an unannounced entry to prevent destruction or removal of the controlled substances. Because of the liquid form of the narcotics seized in this case, the district court concluded that the evidence could have been easily destroyed if

---

**3.** Keene argues that there was a strong aversion to nighttime searches in the common law prior to the adoption of the fourth amendment. *See Monroe v. Pape,* 365 U.S. 167, 210, 81 S.Ct. 473, 496, 5 L.Ed.2d 492 (1961) (Frankfurter, J., dissenting) ("Searches of the dwelling house were the special object of this universal condemnation of official intrusion. Nighttime search was the evil in its most obnoxious form."), *overruled on other grounds, Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

entry had been delayed. The district court recognized that persons who traffic in liquid narcotics often attempt to dispose of them, i.e., by pouring them down a sink or floor drain. This represented an exigent circumstance which allowed for an exception to the "knock-purpose" rule. Thus, we hold that the district court did not err in refusing to suppress evidence seized at Keene's residence after the "no-knock" search.

### III. "Use" of Firearms

■ A defendant's conviction must be upheld if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. *United States v. Marin–Cifuentes*, 866 F.2d 988, 992 (8th Cir.1989); *United States v. Martin*, 866 F.2d 972, 980 (8th Cir.1989). Here, Keene argues that his conviction for possession of firearms "during and in relation to" the drug offense was not supported by substantial evidence. We disagree.

■ This circuit has held that a violation of 18 U.S.C. § 924(c)(1)[4] is supported by a showing that a firearm was available for use during and in relation to a drug trafficking offense. *United States v. Patterson*, 886 F.2d 217, 219 (8th Cir.1989) (per curiam); *United States v. Matra*, 841 F.2d 837, 842–43 (8th Cir.1988). Furthermore, 18 U.S.C. § 924(c)(1) extends to the possession of a firearm which in any manner facilitates the execution of a felony. *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985). The "presence and availability [of a firearm] in light of the evident need may demonstrate the use of a firearm in committing a felony." *Id.* In the present case, the record establishes that, while operating a methamphetamine laboratory in his home, Keene had a veritable arsenal of loaded firearms, including an assault rifle, available for his use there. Thus, we reject Keene's contention as without merit and hold there was substantial evidence to support the conviction under 18 U.S.C. § 924(c)(1).

### IV. Admission of Prior Conviction

■ Keene next argues the district court improperly admitted evidence of Keene's 1976 conviction for the sale of methamphetamine for impeachment purposes. Evidence of a conviction more than ten years old is generally inadmissible unless the district court "determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed.R.Evid. 609(b); *United States v. Maichle*, 861 F.2d 178, 181 (8th Cir.1988). This court has held that Rule 609(b) establishes "a rebuttable presumption against the admissibility of prior convictions more than ten years old." *United States v. Felix*, 867 F.2d 1068, 1073 (8th Cir.1989) (internal citation omitted); *see also United States v. Reeves*, 730 F.2d 1189, 1196 (8th Cir.1984); *United States v. Singer*, 660 F.2d 1295, 1300 (8th Cir.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). "Whether the presumption against admission of such evidence has been overcome is a determination committed to the discretion of the district court." *United States v. Felix*, 867 F.2d at 1073. Consequently, we limit the scope of our review to determining whether that discretion was abused. *Id.* The 1976 conviction was not used in the government's case-in-chief but was brought in under cross-examination. Keene's testimony implied that he had no contact with methamphetamine prior to 1982 and the 1976 conviction was properly admitted for impeachment purposes. Therefore, we hold that the admission of the 1976 drug sales conviction was not an abuse of discretion by the district court.

### V. Sentencing

Finally, Keene argues that the district court erred in classifying him as a "leader" of the drug conspiracy and in ignoring his

---

4. 18 U.S.C. § 924(c)(1) provides in pertinent part: "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years."

"acceptance of responsibility" when calculating his sentence. Furthermore, Keene asserts that, regardless of the calculation of his sentence under the sentencing guidelines, the disparity between his sentence and the sentences of the cooperating co-defendants is contrary to the intent of the sentencing guidelines.

### A. Leader

 Section 3B1.1 of the sentencing guidelines provides that a defendant's offense level is increased by two levels if the defendant is found to be a leader in the criminal activity. Whether a defendant was a leader under § 3Bl.1 is a factual determination for the district judge. *United States v. Streeter*, 907 F.2d 781, 787 (8th Cir.1990). This court has held that review of the findings of fact relied upon by the district court in imposing sentence under the sentencing guidelines is conducted under the clearly erroneous standard. *Id.; United States v. Haynes*, 881 F.2d 586, 592 (8th Cir.1989).

In the present case, the district court found that Keene was a leader because he brought the other participants together and he set up the methamphetamine laboratory in his basement. Furthermore, Keene introduced one co-defendant to the drug for the first time and he sought advice from the informant on improving the manufacturing process. We are not left with the firm and definite conviction that the district court's finding that Keene was a leader was wrong. Therefore, we hold the district court correctly added two levels to Keene's offense level pursuant to Guideline § 3B1.1.

### B. Acceptance of Responsibility

 The determination of the district court regarding acceptance of responsibility under Guideline § 3E1.1 is entitled to great deference and should not be disturbed unless it is without foundation. *United States v. Thompson*, 876 F.2d 1381, 1384 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 192, 107 L.Ed.2d 147 (1989); *United States v. Nunley*, 873 F.2d 182, 187 (8th Cir.1989). Guideline § 3E1.1 allows an offense level reduction of two points for defendants who demonstrate a desire to accept responsibility for their criminal conduct. In order to qualify for a sentence reduction based on acceptance of responsibility, a defendant must "demonstrate a recognition and affirmative acceptance of personal responsibility." *United States v. Thompson*, 876 F.2d at 1384; *see also United States v. Nunley*, 873 F.2d at 187 (failure of defendant to terminate her illegal conduct or surrender herself to police before arrest as well as feigned ignorance of narcotics in her possession disqualified defendant from sentence reduction under § 3E1.1).

In the present case, the district court determined that Keene testified in an untruthful manner and attempted to justify his criminal conduct with "lame excuses." Based on the record, we can find no error by the district court in finding that Keene had not accepted responsibility for his criminal conduct and thus denying Keene a reduction under Guideline § 3E1.1.

### C. Disparity

It is the intent of the sentencing guidelines to avoid unwarranted sentencing disparities among similarly situated defendants. 28 U.S.C. § 991(b)(1)(B). Keene argues that the sentence imposed upon him for the drug conspiracy created an unwarranted disparity between his sentence and the sentences imposed on his co-defendants for the same offense. We disagree.

 The two co-defendants in this case received downward departures for cooperating with the government under § 5K1.1 of the sentencing guidelines. That is the primary reason why Keene's codefendants received considerably lighter sentences than he did. Keene's contention that he is entitled to the same sentence as his co-defendants necessarily assumes that the district court erred in failing to grant him a downward departure as well. His plea for a downward departure was rejected by the district court. Our review of sentencing appeals is limited to those situations outlined by 18 U.S.C. § 3742. The refusal by a district court to grant a defendant a downward departure from the appli-

cable sentencing guideline range is not reviewable by this court under 18 U.S.C. § 3742(a). *See United States v. Evidente,* 894 F.2d 1000, 1004 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990).

■■■■ This court has held that the sentencing guidelines still grant discretion to the district court in adjusting sentences to an individual offender. *United States v. Justice,* 877 F.2d 664, 666 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989); *see also United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.) (sentencing judges retain discretion to consider adjusting the base level for mitigating or aggravating circumstances under the guidelines), *cert. denied,* —— U.S. ——, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989). Our review of the district court's decision to adjust a sentence upwards or downwards is limited to the abuse of discretion standard. *United States v. Justice,* 877 F.2d at 666. In its statement of reasons for imposing the sentence, the district court found that Keene's sentence was "within the range applicable to this defendant and for this offense because the facts found are of the kind contemplated by the guidelines and because a sentence within the range is sufficient, but not greater than necessary, to satisfy the purposes of sentencing relevant to this defendant." We find no abuse of discretion by the district court. Therefore, we reject Keene's contention that the district court erred in sentencing him at a particular point within the applicable guideline range.

In summary, we hold that the district court committed no error in denying Keene's motion to suppress or in finding sufficient evidence to convict him on the use of firearms in connection with drug trafficking count. We also hold the district court did not err in admitting Keene's 1976 drug conviction or in applying the federal sentencing guidelines.

Accordingly, the judgment of the district court is affirmed.