966 F.2d 1446
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Tom W. SMITH, Defendant-Appellant.
 No. 91-5291.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 6, 1992
Decided: June 19, 1992
 
 Argued: David W. Curtis, Phoenix, Arizona, for Appellant.
 Mary Stanley Feinberg, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 On Brief: Michael W. Carey, United States Atttorney, Charleston, West Virginia, for Appellee.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Defendant-appellant Tom Smith appeals his conviction for conspiring to defraud the United States in violation of 18 U.S.C. § 371, and for filing a false individual tax return in 1983 in violation of 26 U.S.C. § 7206(1). The indictment charged that Mr. Smith used investors' and corporate funds for operating expenses and for personal expenses and investments, claimed deductions on his tax return for interests in oil and gas wells for which he had not paid, and improperly assigned his income to his fiancee, Pamela Rae Brown. After a lengthy trial, the jury found appellant guilty on both counts. After a thorough review of the record, we affirm.
 
 I.
 
 2
 Tom Smith, a former gas and oil promoter, founded Vista Oil and Gas Corporation ("Vista") in 1982 and served as its president until the corporation was placed in involuntary bankruptcy in 1985. Through Vista, Smith and the other shareholders, Tom Poole and James Brundige, promoted and sold fractional undivided interests in oil and gas wells in West Virginia and elsewhere, drilled the wells, produced and sold the oil and gas, and distributed the profits. Early financial success from highly productive wells enabled Vista and its principals to invest in a wide array of assets, including real estate, health clubs, racehorses, and yachts.
 
 
 3
 At trial, the government offered substantial evidence against appellant to support the conspiracy and the filing false tax return charges. First, the government introduced evidence supporting its claim that appellant diverted $87,000 of his salary in 1983 to Pamela Rae Brown for the purpose of reducing his taxable income. In addition, government witnesses described how Smith, Poole and Brundige used corporate funds to purchase assorted personal assets, including a racquetball club and its restaurant/lounge, a racehorse, and a yacht. The prosecution also presented evidence that Smith claimed deductions for partnership interests in several oil and gas wells for which appellant never paid. After pleading guilty to one count each of filing false individual tax returns in 1983, Brundige and Poole testified against appellant at trial. Because of the number and complexity of Smith's business transactions, the government provided each juror with a binder containing reproductions of many of its key exhibits.
 
 
 4
 On appeal, Smith argues that the district court erred in (1) denying his motion to dismiss the indictment because the action was barred by the statute of limitations; (2) denying his motion for a bill of particulars; (3) allowing the jury access to jury notebooks that were prepared by the government and contained incomplete and unadmitted exhibits; (4) excluding the testimony of defendant's expert witness; (5) granting the government's motion in limine which prevented appellant from presenting one of its theories to the jury; (6) omitting relevant jury instructions; and (7) denying appellant's motion for judgment of acquittal based on insufficiency of the evidence.
 
 II.
 A.Statute of Limitations
 
 5
 Smith argues that the Court improperly denied his motion to dismiss because the indictment was returned after the three year statute of limitations expired. The applicable statute of limitations, however, for both conspiracy to defraud the United States and for filing false income tax returns is six years. 26 U.S.C. § 6531. Smith was indicted on April 5, 1990. The statute of limitations for the conspiracy charge begins to run, at the latest, at the time of the last overt act proven. See United States v. Vogt, 910 F.2d 1184 (4th Cir. 1990), cert. denied, 111 S. Ct. 955 (1991). Thus, the indictment is timely and the prosecution of Smith is not barred if the government proved an overt act in furtherance of the conspiracy which occurred on or after April 5, 1984. The evidence adduced at trial establishes that Smith supplied false information to his tax preparer in connection with his 1983 individual tax return. The false return was filed on April 14, 1984. The act of filing this return constitutes both an overt act for purposes of the conspiracy and the commission of the offense for the charge of filing a false tax return for 1983. The defendant's claim that the statute of limitations bars both charges is, therefore, without merit.
 
 B.Motion for Bill of Particulars
 
 6
 In order to prevail on a claim that the trial court abused its discretion by denying a motion for bill of particulars, a defendant must prove that he suffered unfair surprise. United States v. Jackson, 757 F.2d 1486 (4th Cir.), cert. denied, 474 U.S. 994 (1985). Smith alleges that he was unfairly surprised by the introduction of a $1,000 check made payable to cash and drawn on the account of a limited partnership allegedly for payment of Smith's gambling debts. Defendant's claim of unfair surprise is not persuasive in light of the fact that the government produced the check to defense counsel during discovery. In addition, the indictment specifically alleged that Smith had used money from limited partnerships for oil and gas wells to pay his personal gambling debts. Finally, Smith received notice of the government's intent to use this evidence of diversion of funds during the direct examination of James Brundige. After defense counsel objected to a question about Charlie Abdella, a construction contractor and bookmaker with ties to the defendant and Vista, the prosecutor informed the court and defense counsel in a bench conference that the check represented payment from limited partnership funds to Mr. Abdella for Smith's gambling debt. Mr. Abdella's testimony to that effect on the next trial day, therefore, could not have surprised the defendant.
 
 
 7
 Smith also alleges that he was unfairly surprised by the government's questions on redirect to James Brundige about the yacht known as "Vista Queen." This argument must also fail because defense counsel, not the government, first mentioned the yacht during the cross examination of James Brundige. The defendant's subsequent failure to object to any of the questions on redirect constitutes a waiver of this point on appeal.
 
 C.Jury Notebooks
 
 8
 Defendant next objects to the jury's use of notebooks which were assembled by the government and which contained over 200 government exhibits. The use of juror notebooks at trial to assist the presentation of evidence is within the discretion of the court, and we review the trial judge's ruling only for abuse of discretion. United States v. Rana, 944 F.2d 123, 126 (3rd Cir. 1991), cert. denied, 112 S. Ct. 981 (1992). Under this standard, our inquiry is limited to "whether any reasonable person could agree with the district court." Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1201 (7th. Cir. 1989) (quoting United States v. $103,387.27 in U.S. Currency, 863 F.2d 555, 561 (7th Cir. 1988)).
 
 
 9
 The extensive record at trial combined with the affidavits submitted in support of the government's motion for sanctions[1] provide us with ample information to determine whether the district court abused its discretion by allowing the jury to refer to the notebooks during the trial. The record reveals that in response to defendant's objection at the outset of the trial to the jury's access to unadmitted evidence in the notebooks, the court expressly warned the jury to refrain from looking at all the exhibits before each one was properly admitted in evidence. The judge also instructed the jury each time he admitted an exhibit which was only partially reproduced in the notebook that the entire document would be available to them during deliberations. On the first day of testimony, the judge told the jury to leave the binders in the jury box during a recess. At the close of the evidence, the court instructed the jury as follows:
 
 
 10
 You've to this point for convenience sake looked at the notebooks, but we'll send in the actual exhibits to you that have been introduced [sic; admitted] into evidence and you may refer to all of those freely as you choose to and as is necessary in reaching your determination.
 
 
 11
 Smith argues that at all times after the binders were distributed, the jurors had access to four incomplete exhibits, four exhibits that were never admitted, and all the exhibits before they were admitted in evidence. The record, however, contains absolutely no evidence to support these assertions. Smith cannot substantiate the claim that the jury disregarded the judge's instructions and examined any exhibit before it was admitted. Likewise, there is no suggestion in the record that the jury even noticed, much less studied, any of the four exhibits that were included in the notebook at the beginning of the trial but were never admitted. Smith has offered no basis for his claim that the jury relied on any of the partial reproductions of exhibits in the notebook instead of considering the complete document available during deliberations. Finally, the affidavits submitted to this court by the government in support of its motion for sanctions clearly illustrate that that the binders were not sent into the jury room during deliberations, and that Smith's allegations to the contrary are not grounded in fact. It is apparent that the district court permitted the jury to use the notebooks in a manner which did not in any way compromise Smith's right to a fair trial.
 
 D.Exclusion of Expert Testimony
 
 12
 At trial, the district court excluded the testimony of defendant's expert witness, Benjamin Randolph. Smith proffered the testimony of Mr. Randolph, a compensated tax preparer, to establish that a tax preparer who signs a tax return for compensation has an obligation to "check the entries on the return and at least get some factual basis to verify them." The judge in this case agreed with the government that, inter alia, the testimony was irrelevant, that the defendant had not laid a proper foundation for the testimony, and that the witness did not qualify as an expert under Fed. R. Evid. 702. A trial judge has broad discretion to exclude expert testimony under Rule 702 if he or she determines that a proposed expert will not significantly assist the trier of fact. See El-Meswari v. Washington Gas Light Co., 785 F.2d 483, 487 (4th Cir. 1986). On appeal, Smith has neither alleged nor shown that Mr. Randolph's testimony would have contributed in any way to the jury's understanding of the evidence. We therefore conclude that the trial judge did not abuse his discretion by excluding defendant's expert witness testimony.
 
 E. Government's Motion in Limine
 
 13
 The trial court granted the government's motion to prevent defense counsel from arguing to the jury that Smith had paid for his interests in two limited partnerships. The court concluded that "[c]learly there is no evidence on the record to show that Mr. Smith paid for a partnership interest in either Ruckman or in Giboney." The court's limited ruling did not affect Smith's ability to present other defenses to the jury on the issue of his allegedly improper deduction of partnership interests.
 
 
 14
 A trial court has the discretion to determine which arguments have at least a colorable evidentiary foundation so as to warrant their presentation to the jury in closing arguments, and this determination will be reversed only for abuse of discretion. See United States v. Felix, 867 F.2d 1068, 1075 (8th Cir. 1989). Because Smith offered no evidence at trial to support his claim that he had in fact paid for the Ruckman and Giboney partnership interests, the trial court properly granted the government's motion in limine on this issue.
 
 F.Jury Instructions
 
 15
 Smith also argues that this Court should reverse his conviction because the trial court's jury instructions were incomplete, oversimplified, and partially erroneous. Appellant's only specific objection to the charge, however, is that the instructions did not comply with the standard of willfulness articulated in Cheek v. United States, 111 S. Ct. 604 (1991). The transcript indicates, however, that the district court incorporated both the language and the principles discussed in Cheek in its instruction on willfulness. In its entirety,[2] the instruction represents a proper statement of the prevailing law on willfulness.
 
 
 16
 When considering a challenge to jury instructions, the inquiry on appeal is limited to "whether, taken as a whole, the instruction fairly states the controlling law." United States v. Cobb, 905 F.2d 784, 78889 (4th Cir. 1990), cert. denied, 111 S. Ct. 758 (1991). It is clear from the record that the district court presented the relevant law to the jury in a fair, accurate, and thorough manner. The charge comported with Cheek and the requirements of the tax code. Consequently, the jury instructions do not constitute reversible error.
 
 G.Sufficiency of Evidence
 
 17
 Finally, Smith asserts that the trial court erroneously denied his motion for judgment of acquittal because the jury had insufficient evidence on which to convict the defendant on both counts. In considering this claim, "the relevant question is not whether the appellate court is convinced of guilt beyond a reasonable doubt, but rather whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989). The record reveals that the government introduced considerable testimonial and documentary evidence from which the jury could reasonably have concluded that Smith had both conspired to defraud the United States and filed a false tax return for the year 1983. Accordingly, Smith's argument that the jury's verdict on both counts was based on insufficient evidence must fail.
 
 III.
 
 18
 Appellee has filed a motion for sanctions against counsel for appellant for purposefully and willfully making false allegations in his brief about the jurors' putative access to the notebooks during deliberations. After reviewing the record, the motion, and the supporting affidavits, we do not believe that counsel's conduct warrants sanctions. The government's motion for sanctions is therefore denied. Finding no error by the district court, appellant's conviction is affirmed.
 
 AFFIRMED
 
 
 [1]
 The government filed a motion for sanctions against counsel for appellant with this Court. We deferred consideration of the motion until oral argument
 
 
 [2]
 Appellant reproduced only a portion of the instruction on willfulness in his brief