**UNITED STATES of America, Appellee,**

v.

**Herbert Loren REEVES, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Eddie Jerome BRANSCUM, Appellant.**

**Nos. 83–1292, 83–1293.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1983.

Decided March 30, 1984.

Rehearing and Rehearing En Banc
Denied May 29, 1984.

---

A. Wayne Davis, Little Rock, Ark., for appellant, Eddie Jerome Branscum.

W. Asa Hutchinson, U.S. Atty., Fort Smith, Ark., for appellee.

Gerald H. Goldstein, Goldstein, Goldstein & Hilley, San Antonio, Tex., R. Wayne Lee, North Little Rock, Ark., for appellant, Herbert Loren Reeves.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Herbert Loren Reeves and Eddie Jerome Branscum appeal from final judgments entered in the District Court [1] for the Western District of Arkansas upon jury verdicts finding them each guilty of conspiracy to distribute marijuana and two counts of distributing marijuana, in violation of 18 U.S.C. § 371 and 21 U.S.C. § 841(a), (b)(4). The district court sentenced Reeves to five years in prison, to be followed by a two-year special parole term, and Branscum to two years in prison to be followed by a two-year special parole term. For reversal appellants argue that (1) the government's failure to provide them, prior to trial, with the "rap sheet" of the government's principal witness was prejudicial; (2) the district court erred in allowing into evidence certain "statements" made by appellants while in custody; (3) the district court erred in failing to suppress the fruits of an illegal warrantless search; (4) they were improperly denied the right to conduct individual voir dire of the jurors; and (5) the evidence was insufficient to show that they had the requisite intent to violate the law. Brans-

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

cum, individually, raises two additional grounds for reversal: (6) the district court erred in denying him the use of an eighteen-year-old criminal conviction to impeach the government's principal witness and (7) the district court erred in denying his motion for severance. For the reasons discussed below, we affirm the judgments of the district court.

## I. *Facts*

The government's principal witness was an informant, Chester Sergent, who testified that he had grown marijuana in Searcy County, Arkansas, from 1976 to 1980, and that from 1978 to 1980 he made payments totalling $2,000 to Reeves, the sheriff of Searcy County, in order to protect his (Sergent's) marijuana farm from legal interference. In 1982 Sergent was arrested for a Florida probation violation and at that time agreed to help the FBI investigate certain drug operations. Sergent then notified the FBI of his previous arrangement with Reeves and agreed to assist in an investigation of the sheriff.

Pursuant to this investigation, Sergent arranged to meet with Reeves on the evening of September 15, 1982. At this meeting Sergent gave Reeves a $200 campaign contribution and asked the sheriff if he had any marijuana for sale. Reeves testified that at that time he believed Sergent was implicitly volunteering to cooperate with him and Deputy Sheriff Branscum in a "reverse sting operation" aimed at a major drug dealer residing in the area. In any event, the two agreed that they would meet on September 17, 1982, and Sergent would, at that time, pay Reeves $2,500 for five pounds of marijuana. Sergent also testified that Reeves, during the September 15 meeting, gave him a small sample of marijuana.

On September 17, Sergent and appellants met at the sheriff's office and subsequently drove in separate vehicles to an isolated location, where the exchange took place under the watchful eyes of the FBI and the Arkansas state police. Appellants re-turned to the sheriff's office and were arrested a short time thereafter.

At the time of the arrest, $500 was found in Branscum's wallet and $1,000 in his left front trouser pocket. This money was part of the "buy money" which the FBI had given to Sergent and which had been dusted with fluorescent powder prior to the exchange. Appellants were asked to place their hands under an ultraviolet light to determine if they had any of the fluorescent powder on their hands. Reeves, before complying with this request, rubbed his hands down his pants legs. After their hands were found to contain traces of the powder, appellants were transported to jail. During the trip to the jail, Branscum spoke with the officers transporting him and allegedly said, "I know I am in trouble. I know I need help."

The day after the arrest, the FBI conducted a warrantless search of the sheriff's office and found the remaining $1,000 of the buy money in a box lying on the floor. The FBI had asked Deputy Sheriff Reid, the only other member of the Searcy County Sheriff's Department, for his consent to search the sheriff's office, and he stated that he would consent if Reeves' wife did not object. Reid called Reeves' wife and she stated that she had no objection to a search of the office if one of her sons could be present. Reid consented to the search, but the search began before the arrival of the younger Reeves.

At trial appellants' theory of defense was that they were conducting a reverse sting operation and therefore lacked the requisite intent for the commission of a crime. The jury, however, rejected this theory of defense and found appellants guilty.

## II. *Errors Claimed by Both Appellants*

### A. Disclosure of "rap sheet"

Appellants' first argument is that they were prejudiced by the government's failure to disclose Sergent's "rap sheet" before trial. They argue that this document should have been disclosed pursuant to their request for documents under Rule

16(a) of the Federal Rules of Criminal Procedure. The government gave appellants a copy of Sergent's rap sheet on the first day of trial; however, the copy was illegible. A legible copy was subsequently provided during Sergent's cross-examination.

To remedy the prejudice allegedly caused by this late disclosure, appellants moved for a continuance. This motion was denied by the district court, with the proviso that appellants could recall Sergent if necessary. Thus, appellants had the use of the rap sheet while cross-examining Sergent and the option of recalling him for further questioning about his criminal convictions.

▆▆▆ A trial court's denial of a continuance motion will not be reversed unless there is a " 'showing of a clear abuse of discretion.' " *United States v. Cohen,* 583 F.2d 1030, 1045 (8th Cir.1978) (quoting *United States v. Pelton,* 578 F.2d 701, 706 (8th Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978)). The Federal Rules of Criminal Procedure do not "require the pretrial disclosure of material evidence as long as the ultimate disclosure is made before it is too late for the defendant to make use of the evidence." *United States v. Olson,* 697 F.2d 273, 275 (8th Cir.1983). Appellants in the instant case were provided with a legible copy of the rap sheet during the cross-examination of Sergent and were advised by the district court that they would have an opportunity to recall him after more closely scrutinizing the rap sheet. Appellants did not recall Sergent. Therefore, the district court was acting within its discretion in denying the motion for continuance.

**B. Disclosure pursuant to Fed.R. Crim.P. 16(a)**

Appellants' second argument is that the district court erred in allowing the government to introduce evidence about Reeves' hand movement and Branscum's "I know I am in trouble" statement. Appellants argue that the government's intent to use these actions as evidence should have been disclosed before trial pursuant to their request under Fed.R.Crim.P. 16(a) for disclosure of all written or recorded statements and all oral responses made by appellants to interrogation.

▆▆▆ Reeves' hand movement was not a written statement and, assuming for purposes of argument that it was an oral statement,[2] it was neither a response to interrogation nor was it recorded. Therefore, the government had no duty to disclose the statement in advance of trial. *United States v. Green,* 548 F.2d 1261, 1267 (6th Cir.1977). Branscum's "I know I am in trouble" statement was an oral statement but was not made in response to interrogation. Therefore, Branscum's statement was not discoverable under Fed. R.Crim.P. 16(a). *See United States v. Johnson,* 562 F.2d 515, 518 (8th Cir.1977) (per curiam). Consequently, the district court did not err in admitting these "statements."

**C. Consent search**

▆▆▆ Appellants' third argument is that the district court erred in denying their motion to suppress the fruits of the illegal warrantless search of the sheriff's office. No emergency or exigent circumstances existed at the time of the search; the only justification for proceeding without a warrant was consent. The parties agree that the purported "consent" given by the sheriff's wife was ineffective because she did not have a sufficient relationship to the sheriff's office, the premises sought to be searched. *See United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Thus, the validity of the search depends upon the consent given by Deputy Reid. For Reid to have consented to the search, he must have possessed common authority over the property being searched. *Id.; cf. United States v. Weath- erd,* 699 F.2d 959, 962 (8th Cir.1983) (occu-

---

**2.** *But cf.* Fed.R.Evid. 801(a)(2) (nonassertive conduct is not a statement for purpose of the hearsay rule).

pant of apartment had sufficient authority to consent to a search of that apartment); *United States v. Buettner-Janusch,* 646 F.2d 759, 764–66 (2d Cir.) (research assistant had sufficient authority to consent to search of professor's research laboratory), *cert. denied,* 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981).

██ The district court found that Deputy Reid had common authority over the sheriff's office. The Supreme Court defined "common authority" in *United States v. Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, as:

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his [or her] own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

According to the district court, there was "absolutely no evidence" that either appellant had exclusive control over any area in the office. Indeed, appellants and Reid had common use of even the desks and drawers in the office. Given that there is no evidence in the record to mandate a contrary inference,[3] we agree with the court below and hold that the nature of the searched area was such that appellants "assumed the risk that [Reid] might permit the common area to be searched." *Id.*

The remaining question is whether Reid consented to the search. The government had the burden of showing, by a preponderance of the evidence, that consent was given. *United States v. Selberg,* 630 F.2d 1292, 1294 n. 1 (8th Cir.1980). Conflicting evidence was presented whether Reid had expressly consented to the search, as claimed by the government, or had merely failed to protest against the search, as Reid testified at the hearing on the motion to suppress. The district court, focusing upon the demeanor of the witnesses and on the fact that Reid was being asked to testify against his employer, found that express consent had been given. Given the conflicting testimony in this case and the limited standard of review on appeal, *United States v. Ramey,* 711 F.2d 104, 107 (8th Cir.1983) ("clearly erroneous" standard of review), we affirm the district court's determination that Deputy Sheriff Reid validly consented to a search of the office.

### D. Voir dire

Appellants' fourth argument is that the district court erred in denying their motion for individual voir dire of prospective jurors. Appellants argue that the prospective jurors needed to be separately and privately questioned because of the prejudicial pretrial publicity surrounding this prosecution.

██ The district court has broad discretion in conducting voir dire and will not be reversed absent a showing of abuse of discretion and substantial prejudice. *United States v. Rossbach,* 701 F.2d 713, 716–17 (8th Cir.1983). This principle is applicable to the determination of whether individual voir dire should be conducted. *United States v. Brown,* 540 F.2d 364, 378 (8th Cir.1976). In *Brown,* seventeen of the forty-four members of the jury panel indicated that they had been exposed to the publicity surrounding the prosecution. The district court questioned those seventeen prospective jurors, within the hearing of the remainder of the panel, as to any prejudice that they may have acquired. This procedure was upheld, on appeal, against an argument for individual voir dire outside the hearing of the other prospective jurors. *See also United States v. Crow Dog,* 532 F.2d 1182, 1198 (8th Cir.1976) (upholding trial court's decision not to conduct individ-

---

**3.** Reid testified (at the hearing on appellants' motion to suppress) that he believed that he lacked the authority to consent to a search of the office. Appellants have relied upon this testimony to demonstrate a lack of common authority; however, in ascertaining whether such authority existed, "[t]he state of mind of the third party giving consent is not controlling; the facts must be given an objective evaluation." *United States v. Selberg,* 630 F.2d 1292, 1295 n. 2 (8th Cir.1980).

ual voir dire in a case arising from the highly publicized Wounded Knee incident), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977).

■ We find no abuse of discretion in the district court's refusal to conduct individual voir dire and no showing that appellants were prejudiced by the manner in which voir dire was conducted.[4] As noted by the district court, the trial was held in a different city (Fayetteville) than the city with which appellants and the crimes charged were connected (Harrison), a factor which tends to mitigate the prejudicial effects of pretrial publicity. *E.g., United States v. Eagle,* 586 F.2d 1193, 1195 (8th Cir.1978) (geographic separation); *see also* Fed.R.Crim.P. 21(a).

### E. Sufficiency of the evidence

The final argument in which both appellants join is that the evidence introduced at trial was insufficient to support their convictions. The crux of this argument is that there was no showing of intent to distribute marijuana, except insofar as it related to their law enforcement duties, as sanctioned by 21 U.S.C. § 885(d).[5]

■ In reviewing the sufficiency of the evidence supporting a jury finding of a fact which is also an ultimate issue of the case, we view the evidence in the light most favorable to the verdict. *United States v. Swayne,* 700 F.2d 467, 471–72 (8th Cir. 1983). "Furthermore, while the evidence must be consistent with guilt, it need not be inconsistent with every other reasonable hypothesis. The essential question is whether the entire body of evidence is suf-

ficient to convince the trier of fact, beyond a reasonable doubt, that the [defendants are] guilty." *Id.* at 472. Finally, the jury must determine the issue of intent from all the circumstances of the case "[b]ecause the element of knowledge is rarely capable of direct proof." *United States v. Cady,* 567 F.2d 771, 774 (8th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

■ In the present case, there is sufficient evidence, when viewed most favorably to the government, to uphold the jury's finding of criminal intent. Appellants kept no records of, and told no other law enforcement authorities about, their alleged reverse sting operation. The failure to keep *any* records supports an inference that there was no reverse sting operation and consequently that appellants criminally intended to distribute marijuana. The fact that $500 of the "buy money" was found in Branscum's wallet, $1,000 in his front trouser pocket and the remaining $1,000 in an ordinary box on the floor of the sheriff's office does not help appellants' cause. Evidence showing the division of the money between appellants supported an inference that the funds were not being kept as evidence, an inference which was inconsistent with appellants' reverse sting operation theory of defense. Finally, the question of intent turns in large part upon the credibility and demeanor of the witnesses and is peculiarly the province of the fact finder. *United States v. Singer,* 660 F.2d 1295, 1302 (8th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982).

---

4. The cases cited by appellants are readily distinguishable from the instant case. For example, in *United States v. Hawkins,* 658 F.2d 279 (5th Cir.1981), 48 of 56 pretrial jurors had heard or read news reports concerning the issues involved at trial. Similarly, in *Silverthorne v. United States,* 400 F.2d 627 (9th Cir.1968), *all* of the prospective jurors had been exposed to pretrial publicity. Finally, both *Hawkins* and *Silverthorne* recognized that the trial court would be reversed only upon a showing of an abuse of discretion.

5. This statute provides as follows:

Except as provided in sections 2234 and 2235 of Title 18, no civil or criminal liability shall be imposed by virtue of this subchapter upon any duly authorized Federal officer lawfully engaged in the enforcement of this subchapter, or upon any duly authorized officer of any state, territory, political subdivision thereof, the District of Columbia, or any possession of the United States, who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances.

21 U.S.C. § 885(d).

We have carefully reviewed the record, viewing the evidence in the manner most supportive of the verdict, and hold that there was sufficient evidence to support appellants' convictions.[6]

### III. *Errors Claimed Only By Branscum*

#### A. Impeachment by use of state conviction

 Branscum first argues that the district court erred in refusing to admit into evidence Sergent's eighteen-year-old breaking and entering conviction. Branscum fully complied with all procedural requirements for the admission of the conviction and argues that it should have been admitted under Fed.R.Evid. 609(b). That rule reads, in pertinent part, as follows:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for the conviction, whichever is the later date, *unless* the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances *substantially* outweighs its prejudicial effect.

Fed.R.Evid. 609(b) (emphasis added). It "establishes what is in effect a rebuttable presumption against the admissibility of prior convictions more than ten years old." *United States v. Singer,* 660 F.2d at 1300 (footnote omitted).[7] Whether evidence of prior crimes should be admitted in the interests of justice is a decision within the discretion of the district court. *Id.* Our scope of review on this issue is limited to determining whether the district court

abused its discretion in refusing to admit the evidence. *Id.*

 Sergent was convicted in 1965 of breaking and entering, a crime which does not directly reflect on his propensity to testify truthfully. Furthermore, Branscum was able to mount a strong attack on Sergent's credibility without the 1965 conviction. The jury was told of Sergent's other, more recent convictions, including a conviction for selling controlled substances. Branscum also introduced several witnesses as to Sergent's bad character and his reputation for untrustworthiness. Given the extent of the evidence as to Sergent's character and reliability, we agree with the district court that under the circumstances the probative value of the 1965 conviction did not "substantially outweigh" its prejudicial effect. Consequently, the district court did not abuse its discretion in refusing to exempt the 1965 conviction from exclusion pursuant to Fed.R.Evid. 609(b).

#### B. Severance

Branscum's final argument for reversal is that the district court erred in denying his motion for severance. The bases for this argument are that the pretrial publicity surrounding Reeves and the testimony regarding prior activities between Reeves and Sergent were both prejudicial to Branscum.

 We will not overturn a trial court's denial of a motion for severance unless the denial constituted clear prejudice and an abuse of discretion. *E.g., United States v. Reeves,* 674 F.2d 739, 744 (8th Cir.1982). A defendant must show something more than the mere fact that his [or her] chances for acquittal would have been

---

**6.** Appellants relied on *United States v. Joyce,* 693 F.2d 838 (8th Cir.1982), in arguing that the evidence is insufficient. *Joyce* is, however, inapposite. Although *Joyce* involved a reverse sting operation, we assumed that intent was present in that case and reversed on the grounds that the defendant had not taken substantial steps towards carrying out his intent. The primary reason for the holding was the defendant's decision *not* to buy cocaine from an undercover agent. *Id.* at 841–42. In the present case the issue is not whether such substantial steps were

taken, but rather whether appellants, who did sell marijuana, possessed the intent to do so illegally.

**7.** As stated by the Senate Judiciary Committee, "convictions over ten years old generally do not have much probative value ... [and] will be admitted very rarely and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 7051, 7061–62.

better had [the defendants] been tried separately. [The defendant] must "affirmatively demonstrate that the joint trial prejudiced [his or her] right to a fair trial." Thus, before the refusal to sever may be deemed an abuse of discretion on the part of the trial court, prejudice to a defendant's right to a fair trial must be established.

*United States v. Jackson,* 549 F.2d 517, 524 (8th Cir.) (citations omitted), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).

 In the present case a conspiracy was alleged, bringing the proceedings under the general rule that "joinder of defendants charged with conspiracy ... is preferred where proof of the charge is based upon the same evidence and acts." *United States v. Reeves,* 674 F.2d at 744 (citations omitted). There was, as Branscum argues, more evidence against Reeves than against Branscum; however, "[a] defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than the evidence against him." *United States v. Jackson,* 549 F.2d at 525 (citation omitted). Thus, a mere difference in the quantum of evidence against each defendant is insufficient grounds for a severance. *E.g., United States v. Kaminski,* 692 F.2d 505, 520 (8th Cir.1982).

 Severance becomes necessary when the evidence is such that a jury could not compartmentalize it as to the various defendants. *United States v. Jackson,* 549 F.2d at 525. The present case, like *Kaminski,* "involves a single, ongoing scheme, lend[ing] itself to a logical compartmentalized analysis. It was not difficult for the jury to sort out the scope of each [appellant's] involvement [in the conspiracy]." *United States v. Kaminski,* 692 F.2d at 516. Furthermore, unlike many defendants, *see, e.g., United States v. Singer,* 660 F.2d at 1306, appellants did not rely upon antagonistic theories of defense. Appellants presented a common theory of defense: they were conducting their own reverse sting operation and therefore lacked any criminal intent. Consequently, our review of the record convinces us that the jury could have applied the evidence independently against each defendant. Therefore, Branscum's right to a fair trial was not prejudiced, and the denial of the motion to sever did not constitute an abuse of discretion.

Accordingly, the judgments of the district court are affirmed.