JUDGE BERNARD concurring in part and dissenting in part.
¶ 49 I concur with the majority's conclusion that this appeal is not moot. I disagree with the majority's holding that the federal Controlled Substances Act (the CSA) does not preempt Colo. Const. art. XVIII, § 14 (2)(e). I therefore respectfully dissent from section III of the majority's opinion.
I. Section 885(d) Provides Immunity Only When Police Officers Are Lawfully Engaged in Enforcing Drug Laws
A. What Is the Right Question to Ask to Decide This Case?
¶ 50 21 U.S.C. § 885(d) states that "no civil or criminal liability shall be imposed" under the CSA on state law enforcement officers who are "lawfully engaged in the enforcement of any law ... relating to controlled substances." Based on the plain language of section 885(d), I conclude that a court must first determine whether law enforcement officers were "lawfully engaged in the enforcement" of drug laws. The court can only move on to decide whether the immunity that section 885(d) grants should apply to the officers' conduct after it answers this preliminary question.
¶ 51 In other words, the right question that section 885(d) asks in this case is: Are officers immune because they were lawfully *611 engaged in the enforcement of section 14 (2)(e)? The wrong question is: Are officers lawfully engaged in the enforcement of that constitutional provision because they are immune?
¶ 52 The answer to the right question is obtained by determining whether section 14(2)(e) is preempted by the CSA. If the Colorado constitutional provision is preempted, then it is unconstitutional. And police officers are not "lawfully engaged" when they enforce unconstitutional laws.
¶ 53 The federal district court's decision in United States v. Rosenthal, 266 F.Supp.2d 1068 (N.D.Cal.2003), rev'd on other grounds, 454 F.3d 943 (9th Cir.2006), is pertinent to the analysis of the right question. The district court concluded that the phrase "lawfully engaged in the enforcement," which is found in section 885(d), means "engaged in enforcing, that is, compelling compliance with ... a law related to controlled substances which is consistent ... or at least not inconsistent ... with [the CSA]." 266 F.Supp.2d at 1079. In such circumstances, section 885(d)"cannot reasonably be read to cover acting pursuant to a law which itself is in conflict with the [CSA]." Id.
¶ 54 A law professor who has written extensively on the issue of whether the CSA preempts various aspects of state medical marijuana laws agrees with this perspective. He recognizes that State v. Okun, 231 Ariz. 462, 296 P.3d 998, 1001-02 (Ariz.Ct.App.2013) ; City of Garden Grove v. Superior Court, 157 Cal.App.4th 355, 68 Cal.Rptr.3d 656, 678 (2007) ; and State v. Kama, 178 Or.App. 561, 39 P.3d 866, 868 (2002), "have held that [ section 885(d) ] immunizes the act of returning medical marijuana to its owner pursuant to a state statute or court order." Robert A. Mikos, Preemption Under the Controlled Substances Act, 16 J. Health Care L. & Pol'y 5, 29 (2013). But he "criticize[s] this interpretation of [ section 885(d) ] as being 'difficult to reconcile with the CSA's preemption language and congressional intent.' " Id . at 29-30 (quoting Robert A. Mikos, On the Limits of Supremacy: Medical Marijuana and the States' Overlooked Power to Legalize Federal Crime, 62 Vand. L.Rev. 1421, 1458 (2009) ). It is difficult to reconcile this interpretation with the CSA because "granting state police ... immunity under section [ section 885(d) ] for distributing ... marijuana would render the express preemption language of [ 21 U.S.C. § 903 ] meaningless." Mikos, On the Limits of Supremacy, 62 Vand. L.Rev. at 1458.
¶ 55 Two additional factors point out why the preemption analysis in this case should not ask the wrong question. First, section 885(d) may not protect state officers from injunctive relief, or from punishment for contempt if officers violate an injunction issued by a federal court. 21 U.S.C. § 882(a) gives federal district courts jurisdiction to enjoin violations of the CSA. See Ex Parte Young, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (prospective declaratory or injunctive relief may be granted against state officials who, in their official capacities, enforce unconstitutional laws).
¶ 56 Section 885(d) only refers to "civil or criminal liability." As a commentator has pointed out, "even if [ section 885(d) ] bars a court from holding a state officer criminally liable, it might not block the court from enjoining the officer from performing her job." Mikos, Preemption Under the Controlled Substances Act, 16 J. Health Care L. & Pol'y at 30 n.155.
¶ 57 Second, section 885(d) does not protect medical marijuana patients who receive marijuana distributed by the police from liability. Section 885(d) only protects law enforcement officers.
¶ 58 The prosecution has clearly raised the issue on appeal of whether medical marijuana patients may be subject to federal criminal prosecution for their act of receiving marijuana from police officers if section 14 (2)(e) is preempted by the CSA. The prosecution's opening brief contends that (1) the part of section 14 (2)(e) that "authorize[s] the ... distribution and possession ... of marijuana-including provisions that authorize law enforcement to return seized marijuana-[is] preempted by the CSA"; (2) "the Colorado law that obligates law enforcement [officers] to return marijuana to medical users of the drug who have been acquitted of marijuana-related crimes is an obstacle" to the fulfillment *612 of Congress' objectives under the CSA; and (3) defendant "had no right to the return of his medical marijuana."
¶ 59 It is certainly possible to advance an argument that marijuana patients are protected from prosecution for other reasons than those supplied by section 885(d) by relying on cases such as Ter Beek v. City of Wyoming, 297 Mich.App. 446, 823 N.W.2d 864, 873 (2012), and Qualified Patient's Ass'n v. City of Anaheim, 187 Cal.App.4th 734, 115 Cal.Rptr.3d 89, 109 (2010). But the insertion of this argument into the analysis undercuts the major premise that the resolution of the preemption issue should begin with the immunity bestowed by section 885(d).
¶ 60 These two additional circumstances indicate that asking the wrong question-whether officers are lawfully engaged in the enforcement of section 14 (2)(e) because they are immune-will lead to anomalous results. The anomaly would be that section 14 (2)(e) would be preempted in certain situations, but not in others. Preemption analysis does not, in my view, contemplate such partial or piecemeal results.
B. Analysis of the Cases Relied Upon by the Majority
¶ 61 Rosenthal, 454 F.3d at 948 ; Okun, 296 P.3d at 1001-02 ; Ter Beek, 823 N.W.2d at 872-74 ; Qualified Patient's Ass'n, 115 Cal.Rptr.3d at 107-111 ; Cnty. of San Diego v. San Diego NORML, 165 Cal.App.4th 798, 81 Cal.Rptr.3d 461, 480-81 (2008) ; City of Garden Grove, 68 Cal.Rptr.3d at 678 ; and Kama, 39 P.3d at 868, do not suggest a different result.
¶ 62 First, Rosenthal, Okun, and Kama did not discuss the question presented by this appeal, which is whether officers would be entitled to immunity under section 885(d) if they were enforcing an unconstitutional law. The Ninth Circuit's analysis in Rosenthal proceeds under the tacit assumption that officers acted to enforce a constitutional law. And the court did not discuss how to apply section 885(d) if the officers had been enforcing a law that conflicted with the CSA. Rosenthal, 454 F.3d at 948. There is no conflict or preemption analysis, and the words "conflict" and "preemption" do not even appear in the opinion.
¶ 63 Okun expressly declined to address the issue whether the CSA preempted Arizona's law. Okun, 296 P.3d at 1002-03.
¶ 64 In Kama, there was "no debate" that the medical marijuana patient was entitled to have the police return his marijuana. Even if the court assumed that the act of returning the marijuana "might constitute delivery of a controlled substance," the prosecution had not "explained-and [the court] did not understand-why police officers would not be immune from any federal criminal liability that otherwise might arise from doing so." Kama, 39 P.3d at 868. Again, there is no conflict or preemption analysis in the opinion.
¶ 65 Second, City of Garden Grove is distinguishable for several reasons. The prosecution relied on the concept of "field preemption," which requires a different analysis than obstacle preemption. See 68 Cal.Rptr.3d at 675 (The prosecution argued that, "in enacting the CSA, Congress intended to occupy the field of marijuana regulation so extensively that ordering the return of a medical marijuana defendant's medical marijuana under state law would be absolutely anathema to congressional intent."). Field preemption is not applicable to this case "because 21 U.S.C. § 903 expressly declares that Congress did not intend to occupy the entire field of controlled substances regulation 'unless there is a positive conflict' between the CSA and state law." Ter Beek, 823 N.W.2d at 871 n. 5.
¶ 66 City of Garden Grove does not discuss section 885(d) in the context of whether officers were "lawfully engaged" in law enforcement when they returned marijuana to medical marijuana patients. Rather, the court included that statute in its analysis of whether the prosecution had standing. 68 Cal.Rptr.3d at 663-64.
¶ 67 City of Garden Grove also does not involve a specific statute or state constitutional section that required police officers to return seized marijuana to medical marijuana patients. Id . at 678. The prosecution therefore did not argue that a state statute or constitutional provision was unconstitutional *613 because it was preempted by the CSA. The court consequently did not consider what effect an unconstitutional law might have on officers' immunity under section 885(d).
¶ 68 The City of Garden Grove court obviously proceeded from the assumption that the constitutionality of a state law was not at issue in the case. It stated that "federal supremacy principles do not prohibit the return of marijuana to a qualified user whose possession of the drug is legally sanctioned under state law." Id . at 678 (emphasis added).
¶ 69 Third, although Ter Beek also discussed preemption, it is distinguishable, too. It analyzed a state statute granting immunity from state prosecution. The opinion makes clear that "the immunity granted under the [state] statute was not intended to include protection from federal prosecutions." 823 N.W.2d at 873. The opinion does not mention section 885(d), and the court does not consider whether officers returning marijuana could be prosecuted under federal law. Rather, the opinion merely states that the state immunity provision is not preempted by the CSA because "it only grants immunity from state prosecution[s]." Id . at 873-74 (emphasis added).
¶ 70 Qualified Patient's Ass'n is distinguishable for the same reason. The court observed that the prosecution did not claim that it was "enforcing a federal criminal sanction attached to the federal marijuana law." 115 Cal.Rptr.3d at 109. Instead, the prosecution sought "to enforce the state sanction of probation revocation which is solely a creature of state law." Id . The opinion does not discuss whether a state law that requires an affirmative act that violates the CSA is preempted by the CSA. The opinion does not refer to section 885(d).
¶ 71 Fourth, I respectfully submit that San Diego NORML, 81 Cal.Rptr.3d at 480-81, is based on an unnecessarily rigid analysis of the concept of "conflict preemption" that has been eschewed by the United States Supreme Court. "Conflict pre-emption" analysis asks whether state law "actually conflicts" with federal law. English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).
¶ 72 There are two varieties of conflict preemption. Id . One variety is "impossibility preemption," which occurs when "compliance with both federal and state regulations is a physical impossibility[.]" Fla. Lime & Avocado Growers, Inc., v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). The other variety is "obstacle preemption," which occurs when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
¶ 73 21 U.S.C. § 903 preempts states laws if they "positive[ly] conflict" with the CSA in such a way that the two laws "cannot consistently stand together." I interpret this language to incorporate both varieties of conflict preemption for the following reasons.
1. Conflict preemption is applicable "[e]ven without an express provision for preemption." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000).
2. The United States Supreme Court has cautioned that the differences between the two varieties of conflict preemption are not "rigidly distinct." Id . at 372, 120 S.Ct. 2288 n. 6 (internal quotation marks omitted).
3. The Supreme Court "has not previously driven a legal wedge-only a terminological one-between 'conflicts' that preempt or frustrate the accomplishment of a federal objective and 'conflicts' that make it 'impossible' for private parties to comply with both state and federal law." Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 873, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).
4. The Supremacy Clause "nullifies" state laws under both varieties of conflict preemption, and the Court has "assumed that Congress would not want either kind of conflict." Id. at 873, 120 S.Ct. 1913.
5. The Court has refused to "tolerate" either variety of conflict preemption when interpreting federal statutes that, akin to 21 U.S.C. § 903, expressly *614 restrict the scope of their preemptive effect. Id . at 873-74, 120 S.Ct. 1913.
6. After the division of the California Court of Appeals decided San Diego NORML, the Supreme Court explored the reach of a federal statute that preempted state medication laws if they had a "direct and positive conflict" with federal law. Wyeth v. Levine, 555 U.S. 555, 567, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). The Supreme Court analyzed this federal preemptive statute, which I submit contains language similar to that found in 21 U.S.C. § 903, under both varieties of conflict preemption. Id. at 568-73, 573-81, 129 S.Ct. 1187.
II. The CSA Preempts the Part of Section 14(2)(e) that Requires Police Officers to Return Marijuana to Medical Marijuana Patients
A. Marijuana Is A Controlled Substance Under Federal Law
¶ 74 In enacting the CSA, Congress made a series of findings and declarations. The findings and declarations that are relevant to my analysis are (1) illegal distribution and possession of controlled substances have a "substantial and detrimental effect on the health and general welfare of the American people"; (2) a "major portion" of drug trafficking occurs in interstate and foreign commerce; (3) local drug trafficking that is not "an integral part" of the interstate flow of drugs still has "a substantial and direct effect upon interstate commerce"; (4) "local distribution and possession of controlled substances" swells interstate drug trafficking; (5) it is not feasible to distinguish between interstate and intrastate distribution; and (6) "[f]ederal control of the intrastate incidents" of drug trafficking "is essential to the effective control" of interstate incidents of drug trafficking." 21 U.S.C. § 801(1) - (6).
¶ 75 Based on these findings and declarations, the United States Supreme Court has stated that the CSA's "main objectives" are to "conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzales v. Raich, 545 U.S. 1, 12, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). In enacting the CSA, "Congress was particularly concerned" with preventing "the diversion of drugs from legitimate to illicit channels." Id . at 12-13, 125 S.Ct. 2195.
¶ 76 And, as the majority points out, the CSA classifies marijuana as (1) a schedule I controlled substance, 21 U.S.C. § 812 Schedule I(c)(10); (2) that threatens a high potential for abuse and that does not have any accepted medical usage, 21 U.S.C. §§ 812(b)(1)(A)-(C) ; and (3) that is contraband for any purpose, Raich, 545 U.S. at 27, 125 S.Ct. 2195.
B. Returning Seized Marijuana to Marijuana Patients Is Distribution of a Controlled Substance Under Federal Law
¶ 77 The CSA defines the term "distribute" to mean "to deliver ... a controlled substance[.]" 21 U.S.C. § 802(11). The word "deliver" means "the actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C. § 802(8). "Any individual who participates in any manner in the unauthorized distribution of such 'controlled substances' is amenable to [the CSA] and the sanctions" that it provides. United States v. Pruitt, 487 F.2d 1241, 1245 (8th Cir.1973) (emphasis added).
¶ 78 The CSA does not contain "a sale or buying requirement to support a conviction; there is now an offense of participation in the transaction viewed as a whole." Id . ; accord United States v. Cortes-Caban, 691 F.3d 1, 18-19 (1st Cir.2012) ("Congress, recognizing that narcotics typically pass through several hands before reaching the ultimate user, opted to view the transaction as a whole and intended to make illegal participation at any and all stages."). And "[t]he underlying goal of the distribution is ... irrelevant to the question of whether there was a 'distribution.' " Id . at 19 (citation omitted).
¶ 79 Section 14(2)(e) states that marijuana "seized by state or local law enforcement officials from a patient ... in connection with the claimed medical use of marijuana shall be returned immediately" to the medical marijuana patient "upon the determination" of the prosecutor that the patient "is entitled to the protection contained in this section as *615 may be evidenced ... by ... acquittal." (Emphasis added.)
¶ 80 Based on federal authority such as Cortes-Caban and Pruitt, I conclude that section 14 (2)(e) requires police officers and medical marijuana patients to distribute a controlled substance. When the officers engage in the physical act of returning marijuana to medical marijuana patients after such patients have been acquitted of criminal charges, the officers deliver it-"actually ... transfer" it-to them. See 21 U.S.C. § 802(8), (11). When the patients engage in the physical act of receiving the marijuana, they "participat[e] in the transaction [when it is] viewed as a whole." Pruitt, 487 F.2d at 1245. And this exchange constitutes the illegal distribution of a controlled substance under federal law even though the "goal" of the exchange is to further the purposes of section 14 (2)(e). Cortes-Caban, 691 F.3d at 19.
¶ 81 City of Garden Grove states that the only way that police officers could violate the CSA by distributing a controlled substance would be if they "intended to act as ... drug peddler[s] rather than ... law enforcement official[s]." 68 Cal.Rptr. at 3d at 681. See also Qualified Patients Ass'n, 115 Cal.Rptr.3d at 109 ("[G]overnmental entities do not incur aider and abettor or direct liability by complying with their obligations under the state medical marijuana laws."). I respectfully suggest that the reasoning in these two cases does not insulate police officers and medical marijuana patients from federal prosecution for two reasons.
¶ 82 First, the present-day situation is that distribution of marijuana remains illegal under federal law. Police officers and medical marijuana patients are therefore on notice that the conduct required by section 14 (2)(e) violates the CSA and that such conduct is subject to prosecution or injunctive action in federal court. They could obviously argue in a state court proceeding-almost certainly successfully-that they did not intend to violate state law because they were protected by section 14 (2)(e). But the likelihood of success of their argument in federal court that they did not intend to violate federal law is, to me, significantly diminished because the CSA's prohibitions are so clear.
¶ 83 Second, assuming for the purposes of argument that section 14(2)(e) provides an effective defense in federal court, it will only serve as a shield from criminal responsibility until it is declared to be unconstitutional. I respectfully submit that the day of such a declaration may not be far in the future.
¶ 84 I recognize that police officers "are charged to enforce laws until and unless they are declared unconstitutional." Michigan v. DeFillippo, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). But once such a declaration is made, police officers are presumptively on notice that their conduct is unlawful if they continue to enforce an unconstitutional statute. See K.P. v. LeBlanc, 627 F.3d 115, 124 (5th Cir.2010) (suit challenging enforcement of state abortion statute; "[W]here a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit."); Lawrence v. Reed, 406 F.3d 1224, 1231-33 (10th Cir.2005) (qualified immunity case under 42 U.S.C. § 1983 ; "[O]fficers can rely on statutes that authorize their conduct-but not if the statute is obviously unconstitutional."); Vives v. City of New York, 405 F.3d 115, 117 (2d Cir.2005) (request for declarative relief, an injunction, and money damages; "We have held that absent contrary direction, state officials ... are entitled to rely on a presumptively valid state statute ... until and unless the statute is declared unconstitutional." (internal quotation marks and alterations omitted)).
¶ 85 City of Garden Grove did not face the question of what would happen if a court declared that a medical marijuana law that police officers were enforcing by returning marijuana to medical marijuana patients was unconstitutional. I respectfully submit that, from the point of such a declaration forward, police officers and medical marijuana patients would be on notice that their conduct would no longer be innocent because state law no longer protects their conduct. In such circumstances, officers who return marijuana to medical marijuana patients would knowingly act as "drug peddler[s] rather than ... law enforcement official[s]," and medical marijuana patients would be knowingly complicit in such distribution.
*616 ¶ 86 In my view, section 14(2)(e) places police officers and marijuana patients in a classic "Catch 22." If they comply with federal law, they risk prosecution under state law. If they comply with state law, they risk prosecution or restraint by injunction under federal law.
¶ 87 So how should this dilemma be resolved? Are state law and federal law co-equal in this context? They are not because the Supremacy Clause says that they are not. Which law should give way? When state law and federal law collide head on, the Supremacy Clause makes clear that federal law must control.
C. Section 14(2)(e) Obstructs the CSA's Clear Purposes
¶ 88 Like the majority, I begin my preemption analysis assuming that the CSA does not preempt section 14(2)(e) because enforcement of drug laws is one of the historic police powers of a state. See Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). To take the next step in the analysis, I must determine what Congress intended when it passed the CSA. Indeed, the key to the preemption analysis is congressional intent. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485-86, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). To discern Congress' intent in this case, I must look to (1) the language of 21 U.S.C. § 903 and its surrounding statutory framework; (2) the CSA's purpose and structure; and (3) how Congress intended the statute to affect "business, consumers, and the law." Id.
¶ 89 To overcome the assumption that the CSA does not preempt section 14(2)(e), I must therefore determine whether Congress has expressed a "clear and manifest purpose" to preempt section 14 (2)(e). Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Unlike the majority, I conclude that Congress has expressed such a purpose, and, as a result, I would further conclude that section 14 (2)(e) is preempted. I reach this conclusion because section 14 (2)(e) frustrates the operation of the CSA within its " 'chosen field' " and " 'refuse[s]' " its " 'natural effect.' " Crosby, 530 U.S. at 373, 120 S.Ct. 2288 (quoting Savage v. Jones, 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182 (1912) ).
¶ 90 A reading of 21 U.S.C. § 903 makes clear that Congress did not intend to preempt the entire field of drug enforcement. But that statute also makes clear that Congress intended to preempt state laws if they "positive[ly] conflict" with the CSA in such a way that the two laws "cannot consistently stand together." Even if Congress did not "completely displace[ ] state regulation in a specific area," state laws are "nullified to the extent that [they] actually conflict[ ] with federal law." Hillsborough County, Florida v. Automated Med. Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985).
¶ 91 Such a positive conflict occurs if a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines, 312 U.S. at 67, 61 S.Ct. 399. I conclude that the CSA preempts section 14(2)(e) because this state constitutional provision "obstructs the accomplishment of the objectives" of the CSA. Willis v. Winters, 350 Or. 299, 253 P.3d 1058, 1064 (2011). It does so because it requires police officers and medical marijuana patients to "engage in conduct that [the CSA] forbids." Mich. Canners & Freezers Ass'n, Inc. v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 478, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984).
¶ 92 The conduct in question is an affirmative act, which is the physical act of returning marijuana. Police officers who return marijuana to medical marijuana patients distribute it, and those medical marijuana patients are complicit in such distribution. And distribution of marijuana is a federal crime under the CSA.
¶ 93 I recognize that the state of Colorado might well be able to repeal some or all of its criminal drug laws-a course of dubious wisdom-without running afoul of the Supremacy Clause. See New York v. United States, 505 U.S. 144, 148, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). In doing so, Colorado would abandon all or part of the field to federal enforcement activities. But section 14(2)(e) does not merely walk away from part or all of the drug enforcement field. Rather, *617 it requires police officers and medical marijuana patients to act in that field in an affirmative way that violates federal law, and this affirmative act obstructs the enforcement of the CSA.
¶ 94 Section 14 (2)(e) obstructs at least some of the reasons why Congress enacted the CSA. By requiring the distribution of marijuana in specified circumstances, section 14 (2)(e) undercuts Congress' concerns, for example, that such distribution has "substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 801(2) ; that local drug trafficking that is not "an integral part" of the interstate flow of drugs still has "a substantial and direct effect upon interstate commerce," § 801(3) ; and that "[f]ederal control of the intrastate incidents" of drug trafficking "is essential to the effective control of the interstate incidents of drug trafficking," § 801(6).
¶ 95 Although no appellate opinion in Colorado has directly addressed the issue in this case, authority from other jurisdictions buttresses my conclusion. The Oregon Supreme Court concluded in Emerald Steel Fabricators, Inc. v. BOLI, 348 Or. 159, 230 P.3d 518, 529 (2010), that a state law that authorized medical marijuana patients to use marijuana was an obstacle to the enforcement of the CSA because the state law "affirmatively authorized the very conduct that federal law prohibited[.]" I find the following analogy that appears in the opinion to be particularly persuasive.
If Congress chose to prohibit anyone under the age of 21 from driving, states could not authorize anyone over the age of 16 to drive and give them a license to do so. The state law would stand as an obstacle to the accomplishment of the full purposes and objectives of Congress (keeping everyone under the age of 21 off the road) and would be preempted.
Id. at 531.
¶ 96 I reframe this analogy in the context of this case as follows. If Congress chooses to prohibit all persons from distributing marijuana, then a state law cannot require police officers to transfer marijuana, and the state law cannot authorize medical marijuana patients to receive it. Such a state law is an obstacle to the full accomplishment of Congress' purposes because it imposes conflicting duties, and federal law would preempt it. See Barnett Bank of Marion Cty., N.A. v. Nelson, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (A state statute is an obstacle to a federal statute if the two laws impose conflicting duties, such as "if the federal law said, 'you must sell insurance,' while the state law said, 'you may not.' "). Section 14(2)(e) imposes a duty that conflicts with the CSA because the Colorado constitutional provision "force[s] some individuals to ... distribute marijuana while the federal ban remain[s] in place." Sam Kamin, Medical Marijuana in Colorado and the Future of Marijuana Regulation in the United States, 12 McGeorge L.Rev. 147, 159 (2012).
¶ 97 State v. Ehrensing, 255 Or.App. 402, 296 P.3d 1279, 1286 (2013), involved facts similar to those here. A trial court ordered a sheriff to return marijuana to a medical marijuana patient after the court had dismissed the criminal charges against the patient on speedy trial grounds. The trial court relied, in part, on a general statute that authorized the return of property which defendants are "lawfully entitled to possess." See Or.Rev.Stat. Ann. § 133.643(3) (West 2013).
¶ 98 The Oregon Court of Appeals reversed. It observed that the trial court should not have ordered the sheriff to return the marijuana because construing the statute in a manner that would "authorize-indeed compel-the return of items whose possession would violate federal law could, as the parties' preemption-related contentions manifest, give rise to 'serious constitutional problems.' " Id. at 1286 (quoting Bernstein Bros., Inc. v. Dep't of Revenue, 294 Or. 614, 661 P.2d 537, 541 (1983) ).
¶ 99 I recognize that the federal government cannot commandeer Colorado law enforcement officers to "enact or enforce a federal regulatory program." Printz v. United States, 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). But I conclude that the CSA has never posed such a threat because it " 'does not require [our state legislature] to enact any laws or regulations, *618 and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals.' " Raich v. Gonzales , 500 F.3d 850, 867 n. 17 (9th Cir.2007) (quoting Reno v. Condon , 528 U.S. 141, 151, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000) ).
¶ 100 The reasoning of Emerald Steel and Ehrensing further convinces me that section 14 (2)(e) does not merely protect Colorado police officers and medical marijuana patients from being commandeered by the federal government, or from acting as proxies for federal officers, in the enforcement of federal law. Rather, section 14 (2)(e) requires police officers and medical marijuana patients to become complicit in the violation of federal law. See United States v. Cannabis Cultivators Club, 5 F.Supp.2d 1086, 1100 (N.D.Cal.1998) ("A state law which purports to legalize the distribution of marijuana for any purpose, ... even a laudable one, nonetheless directly conflicts with federal law[.]"), rev'd on other grounds by United States v. Oakland Cannabis Buyers' Co-op., 190 F.3d 1109 (9th Cir.1999), rev'd by 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001).
¶ 101 Opinions that the attorneys general of Michigan and Oregon have supplied on this issue also support my conclusion. See Colo. Common Cause v. Meyer, 758 P.2d 153, 159 (Colo.1988) ("Since the Attorney General's opinion is issued pursuant to statutory duty, the opinion is obviously entitled to respectful consideration as a contemporaneous interpretation of the law by a governmental official charged with the responsibility of such interpretation.").
¶ 102 A Michigan medical marijuana law required police officers to return marijuana that they had seized to the medical marijuana patients from whom they had seized it. Michigan's Attorney General expressed the opinion that the CSA preempts the Michigan law because it is "impossible" for Michigan law enforcement officers to comply with their duty to return marijuana under state law and their federal law duty not to distribute or assist in the distribution of marijuana. Op. Mich. Att. Gen., No. 7262 at *5 (Nov. 10, 2011).
¶ 103 Oregon's Attorney General concluded that the CSA likewise preempted a similar Oregon law. "Returning marijuana to users would constitute distribution of a controlled substance" under the CSA, which would "obstruct [ ] the accomplishment" of the CSA's "purpose and intended effect to prohibit the distribution and possession of all marijuana[.]" Op. Or. Att. Gen., No. OP-2012-1 at *8-*9 (Jan. 19, 2012).
¶ 104 Because I conclude that the CSA preempts section 14(2)(e), I further conclude that its application is unconstitutional. See Crosby, 530 U.S. at 388, 120 S.Ct. 2288 (application of a preempted law is unconstitutional under the Supremacy Clause); Celebrity Custom Builders v. Indus. Claim Appeals Office, 916 P.2d 539, 541 (Colo.App.1995) ("[S]ince a preemption claim is a challenge to the constitutionality of a statute," a holding that a statute is preempted "constitutes a finding that a state statute is unconstitutional.").
¶ 105 In summary, section 14 (2)(e) requires police officers to violate federal law by engaging in affirmative conduct that the CSA forbids. This mandate creates an obstacle to achieving the purposes and the objectives of the CSA. The existence of this obstacle means that the CSA preempts section 14 (2)(e).
D. Application of Section 885(d)
¶ 106 Once I reach the conclusion that the conduct required by section 14 (2)(e) is preempted and thus rendered unconstitutional by federal law, the prospect that section 885(d) grants immunity to Colorado police officers and medical marijuana patients engaging in such conduct vaporizes. The plain language of Section 885(d) makes clear that "civil or criminal liability" may be imposed under the CSA on state law enforcement officers who are not "lawfully engaged in the enforcement of any law ... relating to controlled substances."
¶ 107 The conclusion I reach here is therefore supported by cases such as Cortes-Caban, 691 F.3d at 21 ; United States v. Wright, 634 F.3d 770, 775-77 (5th Cir.2011) ; and United States v. Reeves, 730 F.2d 1189, 1195-96 (8th Cir.1984). I submit that these decisions are based on the implicit premise that *619 officers who are engaged in enforcing valid, constitutional state and federal laws are protected by subsection 885(d). These decisions do not consider whether officers who are engaged in enforcing invalid, unconstitutional laws are protected by subsection 885(d).
¶ 108 Cortes-Caban, 691 F.3d at 21, stated that "only those officers 'lawfully' enforcing the controlled substances laws are protected under" section 885(d). Those officers "who exceed lawful enforcement techniques" may be prosecuted. Id ."If the police engage in illegal activity in concert with the defendant beyond the scope of their duties," then the proper course is to "prosecut[e] the police," not to free the defendant. Hampton v. United States, 425 U.S. 484, 490, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (plurality opinion). Indeed, Congress obviously intended that the CSA would apply to "the unlawful conduct of law enforcement officers," or it would have had "no reason to have enacted" section 885(d). Cortes-Caban, 691 F.3d at 21.
¶ 109 Wright observed that state law did not "support the contention that any deputy sheriff can break federal drug laws in the course of his own independent investigations[.]" 634 F.3d at 777. Because it is preempted and thus unconstitutional, section 14(2)(e) likewise does not support the contention that Colorado police officers and medical marijuana patients can violate the CSA.
¶ 110 Reeves discussed section 885(d) in the context of whether the evidence submitted at a trial was insufficient to prove that law enforcement officers intended to distribute marijuana "except insofar as it related to their law enforcement duties[.]" Reeves, 730 F.2d at 1195. The court concluded that there was sufficient intent to establish that the officers were not engaged in a "reverse sting" operation that was authorized by federal law. Id. at 1196. The obvious implication of the court's reasoning is that the officers intended to break an existing federal law, and that the validity of that law had not been challenged. There is no indication in the opinion that the court considered what the result would be if the officers had acted under an unconstitutional state law.
¶ 111 Cases such as United States v. Sanchez-Berrios, 424 F.3d 65, 71-72 (1st Cir.2005), and United States v. Serrano-Beauvaix, 400 F.3d 50, 52 (1st Cir.2005), are inapposite to the analysis in this case. They do not analyze the issue whether law enforcement officers who had been charged with crimes were immune from criminal liability under section 885(d).
III. The Trial Court's Order Should Be Disapproved
¶ 112 For the reasons I discuss above, I would disapprove the trial court's order returning the marijuana and the marijuana plants to defendant. There are three Colorado opinions that provide further support for such a result. I recognize that they do not engage in any preemption analysis, and that they do not cite section 885(d). But these cases are helpful because they analyze situations analogous to the one that I have reached at this step of my analysis: a legal landscape in which federal law is relevant and controlling.
¶ 113 Coats v. Dish Network, 2013 COA 62, ¶¶ 6-19, 303 P.3d 147, was a statutory interpretation case. It addressed the issue whether a licensed medical marijuana user was involved in "lawful activity" for purposes of a statute that barred employers from firing employees engaged in lawful activities on their own time away from work. The majority concluded that, "because activities conducted in Colorado, including medical marijuana use, are subject to both state and federal law ... an activity that violates federal law but complies with state law cannot be 'lawful[.]' " Id . at ¶ 14 (citation omitted).
¶ 114 In People v. Watkins, 2012 COA 15, 282 P.3d 500, the division concluded that a defendant's probation could be revoked because he had possessed marijuana and, by doing so, he had violated the CSA. The division held that section 14 does not "permit a court to enter a probation order that would have the effect of exempting a probationer," who is a licensed medical marijuana patient, "from complying with federal criminal statutes outlawing possession and use of marijuana." Id . at ¶ 1.
¶ 115 Beinor v. Indus. Claim Appeals Office, 262 P.3d 970, 973-75 (Colo.App.2011), *620 was an unemployment compensation benefits case. It analyzed the issue whether a licensed medical marijuana user could be denied benefits. His employer fired him after a test determined that he had marijuana in his system during working hours. A state statute says that employees must be denied benefits in such circumstances if the tests identify controlled substances in the employees' systems, and the employees have not been ingesting the controlled substances under doctors' prescriptions. Relying, in part, on the CSA, the majority concluded that the use of marijuana by a licensed medical marijuana patient was not "pursuant to a prescription." Id . at 974.
¶ 116 I emphasize that the scope of this dissent is limited to the conclusion that the CSA preempts the part of section 14 (2)(e) that requires police officers to return seized marijuana to medical marijuana patients. I take no position on whether the CSA preempts any other provision of section 14.